IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JAY AITKEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12-cv-1511 |
| vs. | ) | |
| | ) | |
| DEBT MANAGEMENT PARTNERS, LLC, | ) | Magistrate Judge Jonathan E. Hawley |
| AUDUBON FINANCIAL BUREAU | ) | |
| and FANELLI AND ASSOCIATES LLC | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

**INTRODUCTION**

Plaintiff Jay Aitken claims that defendant Audubon Financial Bureau, LLC ("Audubon") falsely represented that he could be arrested and jailed if he did not pay a debt, falsely represented that it intended to bring a civil suit against him, and telephoned his mother at her place of employment on numerous occasions and disclosed to her that he owed a debt. Plaintiff claims that Audubon's actions violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), the Illinois Collection Agency Act, 225 ILCS 425/9 *et seq*. ("ICAA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/2 *et seq.* ("ICFA"). Plaintiff also claims that defendant Debt Management Partners, LLC ("DMP") is liable for the actions of its agent, Audubon. Plaintiff now moves for summary judgment on liability.

**UNDISPUTED MATERIAL FACTS**

1. This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331, 1337 and 1367. (Amended Answer of Defendants Debt Management Partners, LLC and

1

Audubon Financial Bureau, LLC to Plaintiff's Second Amended Complaint ("Amended Answer"), Exhibit 2, p. 2, ¶ 2.)

2. Venue and personal jurisdiction in this District are proper because: (1) Defendants' collection communications were received by plaintiff within this District; and (2) Defendants do or transact business within this District. (Amended Answer, Ex. 2, p. 2, ¶ 3.)

3. DMP purchases delinquent credit accounts and places the accounts with collection agencies to collect on its behalf. (Deposition of Daniel Valentine, Exhibit 1, p. 6, lines 15-21.)

4. DMP is a debt collector as defined in the FDCPA. (Valentine Dep., Ex. 1, p. 6, lines 15-21.)

5. Audubon is in the business of collecting consumer debts originally owed to others. (Amended Answer of Defendants Debt Management Partners, LLC and Audubon Financial Bureau, LLC to Plaintiff's Second Amended Complaint ("Amended Answer"), Exhibit 2, p. 3, ¶ 9.)

6. Audubon is a debt collector as defined in the FDCPA. (Amended Answer, Ex. 2, pp. 3-4, ¶ 10.)

7. Jay Aitken is a natural person who resides in Spring Bay, Illinois. (April 3, 2014 Deposition of Jay Aitken, Exhibit 3, p. 6, lines 13-22.)

8. In January 2010, plaintiff borrowed $2,000 from a "payday" loan purveyor called the Cash Store. (Aitken Dep, Ex. 3, p. 13, lines 21-24; p. 14, lines 1-3, 24; p. 15, lines 1-2.)

9. Mr. Aitken took out the loan, which had an annual interest rate of more than 200 percent, to pay for his wife's graduate school tuition as well as medical bills. (Aitken Dep, Ex. 3, p. 26, lines 7-21; p. 27, lines 7-11.)

10. Plaintiff made numerous biweekly payments on the loan throughout 2010. (Aitken

Dep., Ex. 3, p. 19, lines 7-24, p. 23, lines 2-9.)

11. At some point, plaintiff ceased making payments on the loan due to financial hardship caused in part by his son's premature birth in April 2011. (Aitken Dep, Ex. 3, p. 7, lines 1-6; p. 34, lines 3-10; p. 41, lines 1-4.)

12. On or before June 18, 2012, DMP purchased the Cash Store debt and placed it with a collection agency, Greystone Alliance, LLC for collection. (June 18, 2012 Letter from Greystone Alliance, LLC to Jay Aitken, Exhibit 4.)

13. In July 2012 the Cash Store debt was placed with Audubon to collect. (Deposition of Randy Zaffran, Exhibit 5, p. 9, lines 6-14.)

14. On Friday, August 3, 2012, plaintiff answered a telephone call from someone who identified herself as "Monica". (Aitken Dep., Ex. 3, p. 63, lines 15-20.)

15. During the call, Monica accused plaintiff of having "willingly defrauded the Cash Store of the money," and stated that "that's considered a Class I felony. People go to jail for that." (Aitken Dep., Ex. 3, p. 63, lines 23-24, p. 64, line 1.)

16. During the call, Monica asked plaintiff for his current address and place of employment because either of those locations would be an appropriate place to "serve" him. (Aitken Dep., Ex. 3, p. 64, lines 6-10.)

17. During the call, after talking with Monica, plaintiff was transferred to and spoke with a man who identified himself as "Frank Salvasio" and whom Monica had identified as an "in-house attorney". (Aitken Dep., Ex. 3, p. 64, lines 12-16.)

18. Mr. Salvasio then offered plaintiff the opportunity to pay the debt in three monthly installments and stated that plaintiff should accept the offer because "if we face you in court in

Peoria you will pay 10 times that amount in attorney fees and such." (Aitken Dep., Ex. 3, p. 67, lines 8-10.)

19.  Audubon's account notes reflect that someone at Audubon had a conversation with plaintiff on August 3, 2012. (Call Log, Exhibit 12; Zaffran Dep, Ex. 5, pp. 17-23; p. 10, lines 19-24; p. 11, lines 1-11.)

20.  Plaintiff's 25 minute conversation on August 3, 2012 left him "stunned" and feeling like he had "been hit by a two-by-four" because, prior to the call, he had been unaware "that it was a Class I felony and that people go to jail" for not paying a debt and also because "the chat with Monica and the attorney was so in my face". (Aitken Dep., Ex. 3, p. 67, lines 2-19.)

21.  After the August 3, 2012 conversations, plaintiff became "very fearful that I would not be able to care for my infant, that I would face arrest", and that he would not be able to post bail. (Aitken Dep., Ex. 3, p. 68, lines 7-22.)

22.  In August or September 2012, plaintiff telephoned Patrick Chambers, a Peoria attorney, to determine whether he would represent plaintiff in the event he was arrested for non-payment of his debt. (Aitken Dep, Ex. 3, p. 70, line 24; pp. 71-73, p. 74, lines 1-7; April 17, 2014 Deposition of Jay Aitken, Exhibit 6, p. 39, lines 20-24; p. 40, lines 1-10.)

23.  Plaintiff also arranged with his father that, in the event plaintiff was jailed, his father would contact Mr. Chambers and arrange to bail plaintiff out. (Aitken Dep., Ex. 6, p. 21, lines 4-11.)

24.  In August 2012, Plaintiff removed the house numbers from the front of his house in order to maintain a low profile. (Aitken Dep., Ex. 3, p. 101, lines 6-24, p. 102, lines 1-18.)

25.  Plaintiff asked his postal carrier not to disclose where he lived if someone was looking for him. (Aitken Dep., Ex. 3, p. 103, lines 4-15; Deposition of Brian Robinson, Exhibit 7,

p. 11, lines 14-24, pp. 12-14, p. 15, lines 1-17.)

26. On Monday August 6, 2012 at 2:57 p.m. (Central Time), "Monica" called plaintiff's home telephone number and left the following message:

> "Hi, this message is for Jay Aitken. My name is Monica. I'm calling in regards to what we had spoken to you about on Friday. Please give our office a call immediately today at 1-888-896-2115., extension 111. Thank you.

(Aitken Dep., Ex. 6, p. 27, lines 6-10, 19-23; Declaration of Jay Aitken, Exhibit 11, ¶¶ 5-7, and Appendix A thereto.)

27. Plaintiff's telephone service provider, Vonage, sent plaintiff an e-mail containing a link, which if clicked, allows the August 6, 2012 message to be heard. (Aitken Dep., Ex. 6, p. 8, lines 10-20, p. 27, lines 1-24; p. 28, lines 1-14; Aitken Declaration, Ex 11, ¶¶ 5-7; Declaration of Terrance Scotton, Exhibit 13, and Appendix 1 thereto.)

28. The call from Monica on August 6, 2012 at 2:57 p.m. was from telephone number 1-888-682-7475. (Aitken Declaration, Ex. 11, ¶ 6, and Appendix C thereto)

29. Plaintiff recognized the voice of "Monica" in the August 6 voice message as the voice of the person who identified herself as "Monica" during the telephone conversation on August 3, 2012. (Aitken Declaration, Ex. 11, ¶¶ 7-8.)

30. The 888-896-2115 telephone number referenced in the August 6, 2012 voice message belongs to Audubon. (Amended Answer, Ex. 2, pp. 5-6, ¶ 17.)

31. On August 31, 2012, at 11:26 a.m., "Monica" called plaintiff's home telephone number and left the following message:

> Hi. This message is for Jay Aitken. My name is Monica. I'm with the A and B Fraud Division. Jay, um, I did speak with you a couple of weeks ago. Um, you stated in a federally recorded line you wanted to take care of this matter. Obviously you had no intentions taking care of this matter, because we have not spoken with you since. I

      don't know if you felt that just because we dropped the judgment that you'd be OK, and you wouldn't have to go to court on the account. Um, as of today, if there is not a payment in this office, we will be sending you to court. You will be served at your homestead. If you can make a payment today, please give our office a call at 1-888-506-1740, extension 111.

(Aitken Dep, Ex. 6, p. 38, lines 7-20; p. 39, lines 4-16; Aitken Declaration, Ex. 11, ¶¶ 9-10.)

      32.    Vonage, sent plaintiff an e-mail containing a link, which if clicked, allows the August 31, 2012 voice message to be heard. (Aitken Declaration, Ex. 11, ¶¶ 9-10.; Scotton Declaration, Ex. 13, and Appendix 2 thereto.)

      33.    Plaintiff recognized the voice of "Monica" in the August 31 voice message as the voice of the person who (a) had left the voice message on August 6, 2012 at 2:57 p.m. and (b) the voice of the person who identified herself as "Monica" during the telephone conversation on August 3, 2012. (Aitken Declaration, Ex. 11, ¶ 11)

      34.    The call from Monica on August 31, 2012 at 2:57 p.m. was from telephone number 1-888-682-7475. (Aitken Declaration, Ex. 11, ¶ 9, and Appendix C thereto.)

      35.    In October 2012, defendants called plaintiffs mother, Judy Aitken, on numerous occasions at her place of employment. (Deposition of Judy Aitken, <u>Exhibit 8</u>, p. 8, lines 7-24, pp. 9-13.)

      36.    In at least one call, Audubon disclosed to plaintiff's mother that he owed a debt. (Judy Aitken Dep, Ex. 8, p. 12, lines 8-24, p. 13, lines 1-7.)

      37.    Audubon's policy manual instructs Audubon collectors that, if a debtor "refuses or avoids you", to contact the debtor's (1) parents, (2) grandparents, aunts, uncles, and cousins, (3) neighbors, and (4) place of employment. (Manual, <u>Exhibit 9</u>, p. ?.)

      38.    DMP's agreement with Audubon "appoints AFB as its collection agent. (Agreement

for the Collections of Consumer Charged-Off Accounts ("Agreement"), Exhibit 10, ¶ 1.)

39. DMP's agreement with Audubon prohibits Audubon from either initiating a lawsuit or engage in credit reporting without DMP's consent. (Agreement, Ex. 10, ¶1(c) and ¶1(d).)

40. As of April 18, 2013, the date of the filing of the Second Amended Complaint in this matter, neither DMP nor Audubon had filed a suit against plaintiff. (Amended Answer, Ex. 2, p. 5, ¶ 16.)

41. As of May 14, 2014, the date of the filing of plaintiff's motion for summary judgment, neither DMP nor Audubon had filed a suit against plaintiff. (Aitken Declaration, Ex. 11, ¶ 13.)

**ARGUMENT**

**I.    THE FDCPA**

In enacting the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), Congress recognized the  –

> universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697, *reprinted in* Hobbes, *Fair Debt Collection* (7th ed) Vol. 2, pp. 724-728. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). The Act is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct

which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt. The Act also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2nd Cir. 1973). Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001); *Whatley v. Universal Collection Bureau*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . ." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2nd Cir. 1989).

The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); accord, *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); *Gearing*, 233 F.3d

at 472.

## II. AUDUBON'S REPRESENTATIONS THAT (A) PLAINTIFF HAD COMMITTED A FELONY AND COULD BE JAILED AND (B) THAT PLAINTIFF HAD BEEN OR WOULD BE SUED VIOLATED THE FDCPA

### A. The Representation That Plaintiff Had Committed A Felony And Could Be Jailed Violated the FDCPA

On Friday, August 3, 2012, plaintiff answered a telephone call from someone who identified herself as "Monica". (Aitken Dep., Ex. 3, p. 63, lines 15-20.) During the call, Monica and a colleague, "Frank Salvasio" made statements to plaintiff that violated the FDCPA.

Monica and Mr. Salvasio were collectors working for Audubon. This is established by the fact that, on Monday August 6, 2012 at 2:57 p.m. (Central Time), "Monica" called plaintiff's home telephone number and left the following message:

> "Hi, this message is for Jay Aitken. My name is Monica. I'm calling in regards to what we had spoken to you about on Friday. Please give our office a call immediately today at 1-888-896-2115., extension 111. Thank you.

(Aitken Dep., Ex. 6, p. 27, lines 6-10, 19-23; Declaration of Jay Aitken, Exhibit 11, ¶¶ 5-7, and Appendix A thereto.) The message alludes to a conversation between (at least) Monica and plaintiff on August 3, 2012. Plaintiff recognized the voice of "Monica" in the August 6 voice message as the voice of the person who identified herself as "Monica" during the telephone conversation on August 3, 2012. (Aitken Declaration, Ex. 11, ¶¶ 7-8.) Defendants' acknowledge that the call-back number that Monica leaves for plaintiff, 888-896-2115, belongs to Audubon. (Amended Answer, Ex. 2, pp. 5-6, ¶ 17.) Audubon's account notes reflect that someone at Audubon had a conversation with plaintiff on August 3, 2012. (Call Log, Exhibit 12; Zaffran Dep, Ex. 5, pp. 17-23; p. 10, lines 19-24; p. 11, lines 1-11.)

The call from Monica on August 6, 2012 at 2:57 p.m. was from telephone number 1-888-

9

682-7475. (Aitken Declaration, Ex. 11, ¶ 6, and Appendix C thereto.) A subsequent call from a person named "Monica" on August 31, 2012 was initiated from telephone number 1-888-682-7475. (Aitken Declaration, Ex. 11, ¶ 9, and Appendix C thereto.) Plaintiff's phone records for August 3, 2012 show a 25 minute call from 888-6872-7475 to plaintiff's home telephone number, 360-542-8373. Plaintiff testified that he talked to Monica and Frank Salvasio on August 3, 2012 for approximately 25 minutes. (Aitken Dep., Ex. 3, p. 67, lines 15-19.)

During the August 3, 2012 telephone conversation, Audubon violated § 1692e, e(4), e(7), and e(10) of the FDCPA, which provide:

> **§ 1692e.  False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.**
>
> **(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer. . . .**
>
> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

False statements made by a debt collector in the course of collecting a debt are *per se* violations of § 1692e(10). "Debt collectors may not make false claims, period." *Randolph v. IMBS, Inc*., 368 F.3d 726,730 (7th Cir. 2004); *Gearing v. Check Brokerage Corp*., 233 F.3d 469, 472 (7th Cir. 2000).

During the August 3, 2012 conversation, "Monica" accused plaintiff of having "willingly defrauded the Cash Store of the money," and stated that "that's considered a Class I felony. People go to jail for that." (Aitken Dep., Ex. 3, p. 63, lines 23-24, p. 64, line 1.

Monica's statements were false. Not being able to pay a debt is not a crime of any sort and Illinois residents are not jailed for not paying their debts. *Jones v. Kunin*, CIV. 99-818-GPM, 2000 WL 34402017 (S.D. Ill. May 1, 2000). Monica's false statement violated §1692e(10)'s prohibition on "the use of any false representation or deceptive means to collect or to attempt to collect any debt". *Ruth v. Triumph Partnerships*, 577 F.3d 790, 802 (7th Cir. 2009) (debt collector's false representation that it could disclose consumer's non-public information with third party violated § 1692e(10)); *Juras v. Aman Collection Service, Inc.,* 829 F.2d 739, 743-44 (9th Cir. 1987) (debt collector's erroneous citation to the bankruptcy code and "federal law" as justification for refusal to release college transcript violated §1692e).

Monica's statements also violated §§ 1692e, e(4) and e(7) because she represented that "nonpayment of any debt will result in the arrest or imprisonment of any person" and that Mr. Aitken had "committed any crime".

In *Davis v. Commercial Check Control, Inc.*, 98 C 631, 1999 WL 89556 (N.D. Ill. 1999), the defendant debt collector sent a letter to the plaintiff which stated in relevant part: "Various PENAL CODES ALLOW FOR CRIMINAL PROSECUTION when a person KNOWINGLY writes a bad check(s).... We may proceed to file your check with local law enforcement...." The Court granted summary judgment to the plaintiff, holding that the quoted statements violated § 1692e, e(4), e(5), and e(10):

> The statements violate Section 1692e(5) because CCC had no particularized intention to refer individual files for criminal prosecution. The statements relating to criminal prosecution violate Section 1692e(4) for essentially the same reason. As the statements allege action that is not intended, the statements are also deceptive, thus violating Sections 1692e and 1692e(10). For the above-stated reasons the defendant's summary judgment motion is therefore DENIED and the plaintiff's motion for summary judgment is therefore GRANTED as to the claims that the statements relating to criminal prosecution violate Sections 1692e, 1692e(4),

1692e(5) and 1692e(10).

*Davis,* 1999 WL 89556 at *7.

In *Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1183 (W.D. Wash. 2011), the defendant debt collector sent a letter to the consumer which stated in relevant part:"You are also CAUTIONED that law enforcement agencies may be provided with a copy of this notice of dishonor and the check drawn by you for the possibility of proceeding with criminal charges if you do not pay the amount of this check within thirty-three (33) days after the date this letter is postmarked." The *Lensch* court found that the quoted language violated §§ 1692e(4) and e(7) of the FDCPA as a matter of law because the statute of limitations had run and the defendant, in any case, had no intention of referring the matter to law enforcement. In granting summary judgment to the plaintiff, the court noted that "The FDCPA was enacted, in part, to prevent debt collectors from making empty threats as a way to coerce payment from consumers" *Lensch*, 795 F. Supp. 2d at 1185 and "The purpose of the FDCPA, in part, is to prevent debt collectors from falsely stating that a consumer committed a crime in order to induce her to pay the debt owed. *Id.*, at 1187.

As in *Davis* and *Lensch,* Monica's false statement that non-payment of a debt was a felony which could subject Mr. Aitken to arrest and jail violated §§ 1692e, e(4), e(7), and e(10). The purpose of Monica's comments was to scare Mr. Aitken into paying his debt: "Emotional distress is not merely a "plausible" result of receiving a phone call threatening criminal prosecution and jail time, it is the *desired* result—debt collectors make such threats with the intent of frightening or browbeating the debtor into making payment." *Smolinski v. Oppenheimer*, 11 C 7005, 2012 WL 2885175 (N.D. Ill. July 11, 2012). *See also F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 174 (3d Cir. 2007) ("the defendant's collectors working there resorted to whatever harassment appeared

likely to succeed [including threats of arrest]; the only limit appears to have been a given tactic's likelihood of bearing fruit by yielding a profit. . . . [W]e believe that their course of conduct exemplifies why Congress enacted the FDCPA and the wisdom of doing so.").

### B. Audubon's Representations That A Lawsuit Had Been or Would Be Filed Against Plaintiff Violated The FDCPA

Audubon violated the FDCPA by representing to plaintiff that a suit had been or would be filed against him to collect the debt. Those representations were false in violation of §§1692e and e(10). Further, they violated §§ 1692e(2)(A) and e(5) of the FDCPA, which provide:

**§ 1692e.  False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2) The false representation of–**

**(A) the character, amount, or legal status of any debt; . . .**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

A debt collector makes a threat to take action that is not intended to be taken if the debt collector threatens suit without the intention of actually filing suit. *U.S. v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 138 (4th Cir. 1996) (letters threatening suit violated e(5) when defendant had no intention of filing suit); *Graziano v. Harrison*, 763 F.Supp. 1269, 1280 (D.N.J. 1991) *aff'd in part and rev'd in part on other grounds*, 950 F.2d 107 (3d Cir. 1991) (debt collector violated e(5) when it threatened to file a lawsuit if the debt was not paid within 10 days of the letter but did not in fact file suit).

Here, during the August 3, 2012 conversation with plaintiff, Monica asked plaintiff for his current address and place of employment because either of those locations would be an appropriate place to "serve" him. (Aitken Dep., Ex. 3, p. 64, lines 6-10.) Monica's stated interest in serving plaintiff suggests that a suit was about to be filed.

After talking with Monica, plaintiff spoke with a man who identified himself as "Frank Salvasio" and whom Monica identified as an "in-house attorney". (Aitken Dep., Ex. 3, p. 64, lines 12-16.) Mr. Salvasio offered plaintiff the opportunity to pay the debt in three monthly installments and stated that plaintiff should accept the offer because "if we face you in court in Peoria you will pay 10 times that amount in attorney fees and such." (Aitken Dep., Ex. 3, p. 67, lines 8-10.) Mr. Salvasio's statements suggested that a suit would be filed if plaintiff did not pay the debt.

And on August 31, 2012, at 11:26 a.m., "Monica" called plaintiff's home telephone number and left the following message:

> Hi. This message is for Jay Aitken. My name is Monica. I'm with the A and B Fraud Division. Jay, um, I did speak with you a couple of weeks ago. Um, you stated in a federally recorded line you wanted to take care of this matter. Obviously you had no intentions taking care of this matter, because we have not spoken with you since. I don't know if you felt that just because we dropped the judgment that you'd be OK, and you wouldn't have to go to court on the account. Um, as of today, if there is not a payment in this office, we will be sending you to court. You will be served at your homestead. If you can make a payment today, please give our office a call at 1-888-506-1740, extension 111.

(Aitken Dep, Ex. 6, p. 38, lines 7-20; p. 39, lines 4-16; Aitken Declaration, Ex. 11, ¶¶ 9-10.) Plaintiff recognized the voice of "Monica" in the August 31 voice message as the voice of the person who (a) had left the voice message on August 6, 2012 at 2:57 p.m. and (b) the voice of the person who identified herself as "Monica" during the telephone conversation on August 3, 2012. (Aitken Declaration, Ex. 11, ¶ 11)

As of April 18, 2013, the date of the filing of the Second Amended Complaint in this matter and eight months after the threats of suit in August 2012, neither DMP nor Audubon had filed a suit against plaintiff. (Amended Answer, Ex. 2, p. 5, ¶ 16.) As of May 14, 2014, the date of the filing of plaintiff's motion for summary judgment, neither DMP nor Audubon had filed a suit against plaintiff. (Aitken Declaration, Ex. 11, ¶ 13.) Although Audubon's collectors threatened plaintiff with suit if he did not pay the debt, in fact Audubon never intended to bring suit. As such, Audubon violated § 1692e(5) by threatening an action it never intended to take.

Similarly, Monica's request for location information on August 3, 2012 violated §1692e(2)(A). Monica's stated interest in serving plaintiff suggests that a suit against plaintiff had *already* been filed. In fact no suit had been filed. The suggestion that a suit had been filed violated § 1692e(2)(A) by mischaracterizing the legal status of plaintiff's debt. *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1989 (attorney's letter referring to the creditor as "plaintiff" and demanding "damages and costs" created false impression that a suit had been filed against the consumer".

### III. AUDUBON'S DISCLOSURE OF THE DEBT TO PLAINTIFF'S MOTHER VIOLATED THE FDCPA

Section 1692c(b) of the FDCPA provides that a debt collector can disclose information about a consumer with anyone other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" *only* with "the prior consent of the consumer given directly to the debt collector". 15 U.S.C. § 1692c(b). *Ruth*, 577 F.3d at 810n6.

In October 2012, Audubon called plaintiffs mother, Judy Aitken, on numerous occasions at her place of employment. (Deposition of Judy Aitken, <u>Exhibit 8</u>, p. 8, lines 7-24, pp. 9-13.) In at least one call, Audubon disclosed to Ms. Aitken that plaintiff owed a debt. (Judy Aitken Dep, Ex.

8, p. 12, lines 8-24, p. 13, lines 1-7.) Audubon did not have plaintiff's consent to disclose to his mother that he owed a debt.

By calling plaintiff's mother, Audubon collectors were following Audubon policy as set forth in its policy manual. The policy manual instructs that, if a debtor "refuses or avoids you", to contact the debtor's (1) parents, (2) grandparents, aunts, uncles, and cousins, (3) neighbors, and (4) place of employment. (Manual, <u>Exhibit 9</u>, p. ?.) The disclosure of a consumer's debt to relatives, neighbors, and employers without the consent of the consumer plainly violates §1692c(b). *Fava v. RRI, Inc.* 1997 WL 205336, *6 (N.D. N.Y. 1997 (debt collector's disclosure of plaintiff's debt to plaintiff's father violated § 1692c(b)); *West v. Costen*, 558 F.Supp. 564, 576 (W.D. Va. 1983) (debt collectors disclosure of plaintiff's debt to plaintiff's grandparents and uncle violated § 1692c(b).

**IV.    AUDUBON'S ACTIONS VIOLATED THE ICAA AND ICFA**

Audubon is a "debt collector" as defined in the Illinois Collection Agency Act, 225 ILCS 425/2. Monica's statement that plaintiff had committed a felony and could be jailed violated ICAA, 225 ILCS 425/9(11) and (20) which prohibit a debt collector from:

> **. . . (11) Threatening to instigate an arrest or criminal prosecution where no basis for a criminal complaint lawfully exists. . . .**
>
> **(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . .**

Likewise, the threats of suit made by Monica and Frank Salvasio on August 3, 2012 and by Monica in the August 31, 2012 voice mail also violate the above referenced provisions of the ICAA.

Audubon's harassment of plaintiff's mother and the disclosure to her that he owed a debt violated 225 ILCS 425/9(17), which provides:

> **(17) Disclosing or threatening to disclose information relating to a debtor's indebtedness to any other person except where such other person has a**

> **legitimate business need for the information or except where such disclosure is regulated by law. . . .**

Similarly, Audubon violated the ICFA which prohibits unfair and deceptive acts and practices in the course of trade or commerce. 815 ILCS 505/2. In determining whether an act or practice is "unfair," both federal and state law consider:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise -- whether, in other words, it is within at least the penumbra of some common-law, statutory or other established concept of unfairness;
>
> (2) whether it is immoral, unethical, oppressive or unscrupulous;
>
> (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. at 244-45 n. 5; *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 418, 775 N.E.2d 951, 960-961 (Il. 2002). *Robinson* made clear, that the ICFA is violated by unfair acts and practices that are not also deceptive. Furthermore, "'All three [*Sperry*] criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three'." *Id*., at 961 (citation omitted).

Audubon's attempt to collect the debt from plaintiff by falsely representing that plaintiff had committed a crime by not paying his debt and that he had been or would be sued to collect the debt meet all three unfairness factors. It was unlawful, oppressive and unscrupulous, and caused plaintiff substantial injury in the form of significant emotional distress.

Audubon's false representations were also plainly deceptive in violation of ICFA §2.

### V. DMP IS LIABLE FOR AUDUBON'S ACTIONS

DMP is liable for Audubon's actions because all of the Audubon's actions in collecting the

Cash Store debt from plaintiff were performed as agent for DMP. DMP's agreement with Audubon "appoints AFB as its collection agent. (Agreement for the Collections of Consumer Charged-Off Accounts ("Agreement"), Exhibit 10, ¶ 1.) DMP also controls the manner in which Audubon collects debts by prohibiting Audubon from either initiating lawsuits or engaging in credit reporting without DMP's consent. (Agreement, Ex. 10, ¶1(c) and ¶1(d).)

A principal-agency relationship exists if the principal has the right to control the agent, even if that right is never exercised. *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 877 (N.D. Ill. 2006) ("the law does not require that a principal *actually* control its agent as a prerequisite for establishing a principal-agent relationship. Instead the test is whether the principal has the *right* to control . . . ." (Emphasis in the original.) Here DMP had the right to control Audubon's collection efforts by restricting Audubon's right to collect debts by bringing suits and credit reporting.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully urges the Court to grant him summary judgment on liability.

Respectfully submitted,

/s Francis R. Greene
Francis R. Greene

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

courtecl@edcombs.com

**CERTIFICATE OF SERVICE**

      I, Francis R. Greene, hereby certify that on May 14, 2014, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following party via electronic mail:

Thomas P. Needham
tpm@needhamlaw.com

                                                  s/Francis R. Greene
                                                  Francis R. Greene