## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JAY AITKEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12-cv-1511 |
| vs. | ) | |
| | ) | |
| DEBT MANAGEMENT PARTNERS, LLC, | ) | Magistrate Judge Jonathan E. Hawley |
| AUDUBON FINANCIAL BUREAU | ) | |
| and FANELLI AND ASSOCIATES LLC | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S REPLY IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT ON LIABILITY

### REPLY TO ADDITIONAL MATERIAL FACTS

**(1) Undisputed Material Facts**

4.      Amanda Mottron testified that she did not talk to Plaintiff on August 3, 2012. M*ottron Dep.*, Ex. C, at 20:13-17.

14.      Judy Aitken testified that her co-worker, Wayne Labins, took a phone call from "Mr. Davenport from the Audubon Financial Corporation." *Judy Aitken Dep.*, Ex. F, at 9:23 – 10:4.

**(2) Disputed Material Facts**

7.      AFB's call log for Plaintiff's account indicates that Doug Burowski, not Amanda Mottron, spoke to Plaintiff on August 3, 2012. *Zaffran Dep.*, Ex. D, at 11:12 –12:4; *AFB Account History for Jay Aitken* ("*Call Log*"), Exhibit E, at 1. Plaintiff disputes that the call-log or account history is admissible. First, there is no competent evidence by a custodian or other qualified witness that it "was kept in the course of a regularly conducted activity of a business" and that "making the record was a regular practice of that activity." Fed.R.Evid. 803(6). Also, the method or circumstances of its preparation indicates lack of trustworthiness. Fed.R.Evid. 803(6). Audubon's own employee, Amanda Mottron, testified that the account history was inaccurate (Deposition of Amanda Mottron, Exhibit 1 hereto, p. 17, lines 1-24, p. 18, lines 1-11) and her testimony is

independently corroborated by the voice messages on August 3, 2012 and August 31, 2012 which were indisputably made by Monica but appear in the account history as made by Ms. Mottron. (Account History, <u>Exhibit E</u> to Defendants' Response to Plaintiff's Motion for Summary Judgment on Liability ("Response"); Response, Answers to ¶¶ 26, 31.)

Ms. Mottron's doubt about the accuracy of the account history is also corroborated by plaintiff's testimony that he received voice messages from Monica on August 7, 8, 9, and 10, 2012. (April 17, 2014 Deposition of Jay Aitken, <u>Exhibit 6</u> to Plaintiff's Motion for Summary Judgment on Liability ("Plaintiff's Motion), p. 30, lines 2-7.) Yet the account history indicates that Ms. Mottron, not Monica, left messages for plaintiff on those dates. (Account History, Response, <u>Exhibit E</u>.)

Finally, there is no competent evidence that the entry referring to Doug Burowski was made at or near the time of the alleged call to Mr. Aitken or that Mr. Burowski made the entry with knowledge of the call. Defendants have not presented any evidence from Mr. Burowski or stated that he was unavailable to give evidence.

8.     The notes on AFB's call log for Plaintiff's account indicate that on August 3, 2012, an AFB employee thought that Plaintiff was going to make payment on his account. *Zaffran Dep.*, Ex. D, at 12:20 – 13:11; Call Log, Ex. E, at 1. Plaintiff disputes that the call-log or account history is admissible. First, there is no competent evidence by a custodian or other qualified witness that it "was kept in the course of a regularly conducted activity of a business" and that "making the record was a regular practice of that activity." Fed.R.Evid. 803(6). Also, the method or circumstances of its preparation indicates lack of trustworthiness. Fed.R.Evid. 803(6). Audubon's own employee, Amanda Mottron, testified that the account history was inaccurate (Mottron Dep., Ex. 1 hereto, p. 17, lines 1-24, p. 18, lines 1-11) and her testimony is independently corroborated by the voice messages on August 3, 2012 and August 31, 2012 which were indisputably made by Monica but appear in the account history as made by Ms. Mottron. (Account History, Response, <u>Exhibit E</u>); Response, Answers to ¶¶ 26, 31.)

Ms. Mottron's doubt about the accuracy of the account history is also corroborated by plaintiff's testimony that he received voice messages from Monica on August 7, 8, 9, and 10, 2012. (Aitken Dep., Exhibit 6 to Plaintiff's Motion, p. 30, lines 2-7.) Yet the account history indicates that Ms. Mottron, not Monica, left messages for plaintiff on those dates. (Account History, Response, Exhibit E.)

Finally, there is no competent evidence that the entry referring to Doug Burowski was made at or near the time of the alleged call to Mr. Aitken or that Mr. Burowski made the entry with knowledge of the call. Defendants have not presented any evidence from Mr. Burowski or indicated stated that he was unavailable to give evidence.

10.     In October and November of 2012, Judy Aitken's office received numerous phone calls from a "financial office." *Deposition of Judy Aitken* ("*Judy Aitken Dep.*"), Exhibit F, at 8:9-12. Plaintiff disputes the implication that there is uncertainty about whether the "financial office" was Audubon. At the time, the only debt plaintiff had outstanding was the Cash Store debt that Audubon was attempting to collect. (Plaintiff's Amended Answers to Defendants' Interrogatories to Plaintiff, Exhibit 2 hereto, p. 8, ¶ 17.)

13.     All that Judy Aitken remembers about the November 2012 phone call is that the caller asked where Plaintiff was and told Ms. Aitken that her son owed a debt. She also told the caller that her son did not work at her office, and asked the caller to stop calling. *Judy Aitken Dep.*, Ex. F, at 12:8 – 13:4. Plaintiff disputes that defendants have completely summarized what Ms. Aitken recalled about the November 2012 phone call. Ms. Aitken also recalled that the call lasted a couple of minutes and that she told the caller that her office had been receiving numerous calls from the caller's company, that receiving so many calls was very stressful, and that she and her company had nothing to do with plaintiff and his debts. (Deposition of Judy Aitken, p. 12, lines 17-23, Exhibit F to Response.

**(3) Disputed Immaterial Facts**

**(4) Undisputed Immaterial Facts**

1. Plaintiff filed this lawsuit on December 14, 2012. *Plaintiff's Complaint*, Exhibit A.

2. Plaintiff may have taken out as many as 10 or 11 loans from Advance America in 2010. *April 3, 2014 Deposition of Plaintiff*, Exhibit B, at 33:5-11.

3. Amanda Mottron has been employed as a bill collector at AFB for the past three years. *Deposition of Amanda Mottron* ("*Mottron Dep.*"), Exhibit C, at 4:6-14.

5. Randy Zaffran is a manager at AFB and has been employed at AFB for a little over three years. *Deposition of Randy Zaffran* ("*Zaffran Dep.*"), Exhibit D, at 4:7-10.

6. Doug Burowski was formerly a manager at AFB. *Zaffran Dep.*, Ex. D, at 11:17 – 12:1.

9. There is no way to tell from AFB's call log for Plaintiff's account how long the August 3, 2012 phone call lasted. *Zaffran Dep.*, Ex. D, at 13:12-24.

11. Judy Aitken only spoke to the callers from the "financial office" on one occasion. *Judy Aitken Dep.*, Ex. F, at 11:3-12.

12. In the one phone call that Judy Aitken took in November 2012, she spoke to a woman. *Judy Aitken Dep.*, Ex. F, at 11:14-24.

**ARGUMENT**

**I.     Defendants Do Not Cite Any Colorable Evidence In Opposition
To Plaintiff's Motion For Summary Judgment On Liability**

To avoid summary judgment, defendants "must set forth specific facts that demonstrate a genuine issue of triable fact and must produce more than a scintilla of evidence to support" their position. *Pugh v. City Of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). "A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party'." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Here, no reasonable jury could return a verdict for the defendants.

**A.     The August 3, 2012 Telephone Conversation**

Defendants argue that there is a question of fact as to who at Audubon talked with plaintiff on August 3, 2012. They argue that only one person talked to plaintiff, and that person was Doug Burowski, a former Audubon employee. Defendants' argument is without merit because it does not rely on the testimony of anyone with personal knowledge but rather it relies on an inadmissible account history or call-log, a document purporting to summarize Audubon's collection efforts directed at plaintiff. (Account History, Response, Exhibit E.) The account history is hearsay and does not fall under the business record exception to the hearsay rule. Absent the account history, there is *no* evidence contradicting plaintiff's testimony that he talked to Monica and Frank Salvasio on August 3, 2012 and that Monica represented that plaintiff had committed a felony for which he could be jailed and that Mr. Salvasio threatened him with suit.

Defendants' argument that Doug Burowski alone talked to plaintiff on August 3, 2012 is at odds with their interrogatory answer in which they stated that the *only* person to talk with plaintiff on August 3, 2012 was Audubon collector, Amanda Mottron. (Defendants' Response to Plaintiff's Interrogatories, Exhibit 3 hereto, pp. 2-3, ¶ 5.)  That interrogatory answer was  false because Ms. Mottron denied talking with plaintiff on August 3, 2012. (Undisputed Material Facts, *supra*, ¶ 4.)

Relying on the account history, Ms. Mottron testified that it appeared that Mr. Burowski had

talked to plaintiff on August 3, 2012. (Mottron Dep., Exhibit 1 hereto, p. 17, lines 1-24, p. 18, lines 1-11.) Similarly, Randy Zaffran, an Audubon manager, testified on the basis of the account history that Mr. Burowski had talked to plaintiff on August 3, 2012. (Deposition of Randy Zaffran, Exhibit 5 to Plaintiff's Motion, p. 10, lines 19-24; p. 11, lines 1-24, p. 12, lines 1-3.) Neither Ms. Mottron nor Mr. Zaffran had any personal knowledge as to who talked to plaintiff on August 3, 2012. Defendants have not cited any testimony from Mr. Burowski that would authenticate the entry on the call history nor do they indicate that he was unavailable to testify.

The account history is, therefore, the *only* evidence defendants have cited to contradict plaintiff's account of his conversation with Audubon employees on August 3, 2012. The account history is hearsay, and it is not a "business record" subject to the business record exception to the hearsay rule. Fed.R.Evid. 803(6). A document is admissible as a business record if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

*NRRM, LLC v. Mepco Fin. Corp.*, 10 C 4642, 2013 WL 4537391, *4-5 (N.D. Ill. Aug. 27, 2013); *Wheeler v. Sims*, 951 F.2d 796, 802 (7th Cir. 1992).

The account history is inadmissible as a business record for a number of reasons. First, it is not admissible because there is no competent evidence by a custodian or other qualified witness that it "was kept in the course of a regularly conducted activity of a business" and that "making the record was a regular practice of that activity." Fed.R.Evid. 803(6). *NRRM, LLC*, 2013 WL 4537391at *4-5 (holding that document was inadmissible as a business record).

Secondly, defendants have proffered no evidence that the account history "was made at or near the time by – or from information transmitted by –someone with knowledge." The

account history shows a series of calls allegedly made by Ms. Mottron to plaintiff in August and September 2012. (Account History, Response, Exhibit E.) However, at her deposition, Ms. Mottron denied that the account history was accurate because she did not believe she would have made so many calls in such a short period. She attributed the inaccuracy of the account history to Audubon's computer systems: "our [computer] systems do get messed up, but I don't see myself calling a debtor over and over like that, so there must have been a mistake." (Mottron Dep., Ex. 3 hereto, p. 10, lines 8-24; p. 11, lines 1-13.) Further, both Ms. Mottron and Mr. Zaffran testified that a third party, Doug Burowski, made the entry on August 3, 2012. Defendants have not introduced any evidence that Mr. Burowski's entry was made at or near the time of the alleged call to Mr. Aitken or that Mr. Burowski made the entry with knowledge of the call.

Ms. Mottron's skepticism about the accuracy of the of the account history is supported by the following undisputed facts. On Monday August 6, 2012, three days after talking to Monica and Frank Salvasio on Friday, August 3, 2012, plaintiff received a voice-mail message from Monica. He also received a voice mail message from Monica on August 31, 2012. Defendants do not dispute these calls were made or that the messages were left. (Response, Answers to ¶¶ 26, 31.) But the account history reflects that *Amanda Mottron*, and *not* Monica, called and left the messages for plaintiff on August 6, 2012 and August 31, 2012. (Account History, Response Exhibit E.) So the account history is demonstrably false with respect to both the August 6, 2012 and August 31, 2012 calls.

The inaccuracy of the account history is also corroborated by plaintiff's testimony that he received voice messages from Monica on August 7, 8, 9, and 10, 2012 (Aitken Dep., Exhibit 6 to Plaintiff's Motion, p. 30, lines 2-7.); yet the account history indicates that Ms. Mottron, not Monica, left messages for plaintiff on those dates. (Account History, Response, Exhibit E.)

Defendants do not raise an issue of triable fact as to whom plaintiff talked to on August 3, 2012. When "evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, a summary judgment may be granted." *Berry v. Am. Cmty. Mut. Ins. Co.*, 855 F. Supp.

256, 259 (C.D. Ill. 1994). Absent the call history, there is no competent evidence contradicting plaintiff's testimony that Monica represented that he had committed a felony and that Mr. Salvasio had threatened him with suit on August 3, 2012 in violation of the FDCPA.

*Swearingen v. Portfolio Recovery Assocs., LLC*, 892 F. Supp. 2d 987 (N.D. Ill. 2012) and *Lashbrook v. Portfolio Recovery Assocs., LLC*, 11 CV 15624, 2013 WL 4604281 (E.D. Mich. Aug. 29, 2013), cited by defendants, are not apposite. In those cases, unlike here, summary judgment was denied because *admissible* evidence existed which raised an issue of triable fact. *Swearingen*, 892 F. Supp. 2d at 992-993; *Lashbrook*, 2013 WL 4604281, at *8-9. Here, in contrast, defendants have only raised inadmissible hearsay as a basis for denying plaintiff's motion for summary judgment.

Defendants also cite *Marr v. Bank of America, N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) for the proposition that "uncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011). *Marr* is also inapposite. The testimony of Mottron and Zaffran with respect to who talked with plaintiff on August 3, 2012 was *not* based on personal knowledge or firsthand experience. Their testimony was based solely on their reading of the account history which, as discussed above, is not trustworthy and inadmissible.

### B. The August 31, 2012 Call

Defendants argue that Monica's threat of suit on August 31, 2012 did not violate §1692e(5)'s prohibition on threats "to take any action . . . that is not intended to be taken" because they might still have brought suit against plaintiff had plaintiff not brought the instant case first. Defendants' argument is belied by the fact that defendants have *never* brought a suit against *anybody* in the majority of counties in Illinois, including Peoria, Tazewell, and Woodford counties near where plaintiff resides. (Declaration of Daniel A. Edelman, Exhibit 4 hereto, ¶¶ 4-5.) Courts have found that debt collectors do not intend to file suit if they in fact rarely do so.

*U.S. v. Nat'l Fin. Servs, Inc.*, 98 F.3d 131, 138 (4th Cir. 1996) (fact that collector had not filed any suits during the relevant time period was evidence that collector did not intend to file suit); *Davis v. Commercial Check Control, Inc.*, (evidence that debt collector did not intend to refer matter to district attorney for suit is that in a sample of 20,000 cases, debt collector had not referred one to the district attorney for prosecution.)

Defendants also argue that the August 31, 2012 voice message does not violate §1692e(2)(A)'s prohibition against misrepresenting the "legal status of any debt" because the threat of suit was phrased in the future tense. But the unsophisticated consumer could understand the August 31, 2012 message to mean that a suit *had* been filed, but that service of process had been deferred pending attempts to obtain payment. The message threatens that if Audubon did not receive a payment that day, then the case would actually be actively litigated, beginning with service of process on plaintiff at his home. "Um, as of today, if there is not a payment in this office, we will be sending you to court. You will be served at your homestead." (Aitken Dep., Exhibit 6 to Plaintiff's Motion, p. 38, lines 7-20; p. 39, lines 4-16.)

### C. The Call to Plaintiff's Mother

Defendants argue that there is no evidence that the call received by Judy Aitken, plaintiff's mother, was from Audubon. Defendants argue (Response, p. 29) that "Plaintiff had a number of payday loans outstanding, *DSOAF*, at ¶ 2, so the unidentified woman who spoke to Ms. Aitken could have been referring to any one of Plaintiff's 10 or 11 payday loan debts." Plaintiff testified he had a number of outstanding payday loans in 2010; by 2012, the only outstanding payday loan was the Cash Store debt Audubon was trying to collect. (Plaintiff's Amended Answers to Defendants' Interrogatories to Plaintiff, Exhibit 1 hereto, p. 8, ¶ 17.)

Ms. Aitken testified that her office was bombarded with calls and that her office manager determined that the calls were coming from Audubon. Throughout her testimony, it is clear that the call she received was from the same "financial office" that had been bombarding the office with calls and which her office manager had determined were from Audubon. Since the only

outstanding debt plaintiff had at the time was a debt to Audubon, there can be little doubt that the person she talked to, who disclosed to her that her son owed a debt, was an Audubon collector.

## II.    Debt Management Partners, LLC Is Liable For Audubon's Actions

Defendants do not respond to plaintiff's argument that defendant Debt Management Partners, LLC ("DMP")  is liable for Audubon's actions. Accordingly, any such argument is waived. *Jorden v. Walmart Stores, Inc.*, 332 F. Supp. 2d 1172, 1177 (C.D. 2004) (undeveloped and perfunctory arguments are waived). DMP is liable for Audubon's actions.

## III.   Defendants Violated the ICAA and the ICFA

For the reasons cited above, plaintiff's motion for summary judgment on liability should be granted with respect to plaintiff's ICAA and ICFA claims. Although plaintiff has not moved for summary judgment on damages, plaintiff's motion for summary judgment on liability included evidence of damages sufficient to warrant a judgment being entered against defendants on liability under the ICFA and ICAA.

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully urges the Court to grant him summary judgment on liability.

Respectfully submitted,


s/ Francis R. Greene
Francis R. Greene


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## **CERTIFICATE OF SERVICE**

I, Francis R. Greene, hereby certify that on June 23, 2014, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following party via electronic mail:

Thomas P. Needham
tpm@needhamlaw.com

                                    s/ Francis R. Greene
                                    Francis R. Greene

# EXHIBIT 1

Transcript of

# Amanda Mottron

**Date:** November 26, 2013
**Volume:** I

**Case:** Aitken v. Debt Management Partners

Elite Deposition Technologies
Phone:312-445-0005
Email:info@elitedeps.com
Internet: www.elitedeps.com



IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

------------------------------------------------

JAY AITKEN,


            Plaintiff,

 -vs-                        FILE NO. 12-CV-1511

DEBT MANAGEMENT PARTNERS, LLC,
AUDUBON FINANCIAL BUREAU,


            Defendants.

------------------------------------------------

     Examination before trial of AMANDA MOTTORN, held

before Kelly S. Hairston, Notary Public, at 298 Main

Street, Suite 404, Buffalo, New York, on Tuesday, November

26th, 2014 at 10:30 a.m., pursuant to notice.

APPEARANCES          EDELMAN, COMBS,
                     LATTURNER & GOODWIN, LLC.
                     BY:  FRANCIS R. GREENE, ESQ.,
                     120 S. LaSalle Street, Suite 1800,
                     Chicago, Illinois 60603,
                     Ph. (312) 739-4200
                     Attorney for the Plaintiff.

                     ZDARSKY, SAWICKI & AGOSTINELLI,
                     BY:  DAVID G. GUTOWSKI, ESQ.,
                     298 Main Street, Suite 404,
                     Buffalo, NY 14202
                     Ph. (716) 855-3200
                     Attorney for the Defendants.

```
 1                    W I T N E S S E S

 2   WITNESS               EXAMINATION            PAGE

 3   Amanda Mottorn        by Mr. Greene          03

 4

 5

 6                    E X H I B I T S

 7   EXHIBIT              DESCRIPTION             PAGE

 8   1        List of Topics                     03

 9   2        Account History                    03

10   3        Amended Answer                     03

11   4        Training Document                  03

12   5        Collection Agreement               03

13              ALL EXHIBITS RETAINED BY COUNSEL

14

15

16

17

18

19

20

21

22

23

24
```

1                      AMANDA MOTTORN,

2      287 South Street, Lockport, New York, having been

3    first duly sworn, was examined and testified as

4    follows:

5

6    The following stipulations were entered into by

7    counsel:

8

9      It is hereby stipulated by and between the attorneys

10    for the respective parties hereto that the oath of the

11    Referee is waived, that signing, filing and

12    certification of the transcript are waived and that all

13    objections, except as to the form of the questions, are

14    to be reserved until the time of trial.

15

16      (Proposed Exhibit Numbers 1-5 marked for

17      identification.)

18

19                      EXAMINATION

20 BY MR. GREENE:

21 Q. I'm having a little trouble hearing you, Ms. Mottorn.

22    So if you can just speak up a little bit when you

23    answer my questions. Just to keep it simple,

24    throughout this deposition, I'm going to refer to

1   Audubon Financial Bureau, LLC as just Audubon.  So when

2   I refer to Audubon throughout this deposition, will you

3   understand me as referring to Audubon Financial Bureau,

4   LLC?

5   A. Yes.

6   Q. Who do you work for?

7   A. Audubon Financial.

8   Q. And how long have you worked for Audubon?

9   A. Almost three years.

10  Q. And what is your current position at Audubon?

11  A. A bill collector.

12  Q. Have you had that same position the whole three years

13  you've worked for Audubon?

14  A. Yes.

15  Q. Prior to working for Audubon, did you work for any

16  other debt collection agency?

17  A. No.

18  Q. What is your highest level of education?

19  A. 11th grade.

20  Q. And in what year did you attend the 11th grade?

21  A. 2008.

22  Q. When you first started working at Audubon, did you

23  receive any training?

24  A. Yes.

1   Q. What kind of training did you receive?

2   A. The FDCPA, how they taught me how to work the

3      accounts.

4   Q. How long did the training last?

5   A. Two weeks.

6   Q. And who gave you the training?

7   A. His name was Mike.

8   Q. Do you know Mike's last name?

9   A. No.

10  Q. And what was the training like, did you have to go --

11     was it like going to class?

12        MR. GUTOWSKI:  Object to form.

13        THE WITNESS:  Yeah.

14

15  BY MR. GREENE:

16  Q. Were you shown any movies?

17  A. Yes.

18  Q. What movies were you shown?

19  A. How to speak to a debtor.  I don't know the name of

20     them.

21  Q. Were you given any materials to read?

22  A. Yeah, the FDCPA booklet and that's it that I

23     remember.

24  Q. After your two week training, have you received any

1     other training since then?

2   A. No, I haven't needed any.

3   Q. Okay.

4       MR. GREENE:  Mr. Hairston, would you show Ms.

5     Mottron Exhibit 4?

6

7   BY MR. GREENE:

8   Q. Ms. Mottorn, would you look at what's previously been

9     marked as Exhibit 4 and let me know when you're done

10    reviewing it?

11      THE WITNESS:  I've seen this.

12      MR. GUTOWSKI:  Hang on a second.  Just review, go

13    through the whole document just to make sure.  You

14    familiarize yourself with the document and then he's

15    going to ask you questions about it.

16      THE WITNESS:  Okay.

17      MR. GUTOWSKI:  Okay?  So when you're done, just let

18    him know that you reviewed it and he can go from there.

19      THE WITNESS:  Okay.  I reviewed it.

20

21  BY MR. GREENE:

22  Q. So have you seen this document before today?

23  A. I've seen it a lot.

24  Q. And where have you seen it before?

1   A. At Audubon Financial.

2   Q. And when have you seen it?

3   A. Yesterday.

4   Q. Why yesterday?

5   A. Because it's on my desk.

6   Q. Okay.  Is every single page of this document on your

7      desk?

8   A. Yes.

9   Q. Do you know if this document is on the desks of all the

10     collectors at Audubon?

11  A. Yes.

12  Q. Okay.  Was this document shown to you during your

13     initial training?

14  A. Yes, that's when we received it.

15  Q. Okay.  So if you can flip to the 12th page of this

16     document, toward the top in big letters it says order

17     of business.

18  A. Okay.

19  Q. So there's a reference on this page to a box, do you

20     see that?

21  A. Which box?

22  Q. Well, there's a box at the bottom of the page.

23  A. Oh, yeah.

24  Q. And then there's writing that says "When you feel a

1    person refuses or avoids you, there should be a

2    verified action taken to ensure that you've done every

3    necessary step to confirm their intention, the box

4    which is built around each debtor." So do you see that

5    language?

6  A. Yes.

7  Q. So what's your understanding about what the box is?

8  A. I don't know.

9  Q. How is it that you don't know since this is a document

10    that's on your desk and you received it in training?

11  A. I don't read it everyday. I was in training three

12    years ago.

13  Q. So the last time you read it was three years ago?

14  A. Probably.

15  Q. And so you haven't referred to this Exhibit 4 since

16    then?

17        MR. GUTOWSKI: Object to form, that's not what she

18    said.

19

20  BY MR. GREENE:

21  Q. You can go ahead and answer.

22        MR. GUTOWSKI: You can answer the question.

23        THE WITNESS: Okay. I haven't looked at this packet

24    in three years. Yeah, because I figured I remembered

1      everything.

2

3    BY MR. GREENE:

4    Q. Okay.

5    A. I know a lot of stuff, but I can't tell you what this

6       box means.

7    Q. Oh, okay.  All right.

8    A. It doesn't look right.  It looks weird.

9         MR. GUTOWSKI:  Let him ask another question.

10         MR. GREENE:  All right.  Mr. Hairston, would you

11      show or give the witness Exhibit 2 which is the account

12      history?

13

14    BY MR. GREENE:

15    Q. Please review the account history and then let me know

16       when you're done.

17    A. Okay.

18         MR. GUTOWSKI:  Did you look at all pages of the

19      document?

20         THE WITNESS:  Oh, I thought he was talking about

21      this one.

22         MR. GUTOWSKI:  Just familiarize yourself with the

23      document.

24         THE WITNESS:  I can't even read that.  Okay.

1       collectors and accidentally leaving left messages

2       because I don't call a debtor like that.

3

4   BY MR. GREENE:

5   Q. Okay.  All I'm asking you is what this is?

6   A. It's me with my name saying that I left a message.

7   Q. Okay, and do you have any reason to think that this is

8       not accurate?

9   A. Sometimes --

10          MR. GUTOWSKI:  Object to form.

11          THE WITNESS:  -- our systems do get messed up, but I

12      don't see myself calling a debtor over and over like

13      that, so there must have been a mistake.

14

15  BY MR. GREENE:

16  Q. How did the systems get messed up?

17          MR. GUTOWSKI:  Object to form.

18          THE WITNESS:  Sometimes they do.

19          MR. GUTOWSKI:  Just wait until he finishes the

20      question and then if I'm going to object, wait until

21      I'm done then you can answer, okay?

22          THE WITNESS:  Um-hmm.

23

24  BY MR. GREENE:

1   Q. When they get messed up, what form does it take?

2   A. I don't know.

3   Q. How do you know that the system gets messed up

4      sometimes?

5   A. Just because it's a computer system.

6   Q. So do you -- so on this Exhibit 2, it seems to indicate

7      that on July 31, 2012 at 9:11 in the evening, you made

8      a call to phone number 360-542-8373, do you see that?

9   A. I don't see a phone number.

10  Q. Okay.  Well, let's --

11  A. Oh, yes, I do.

12  Q. So in the upper left hand corner, there's some

13     information.  It says Audubon Financial Bureau, LLC.

14     It has an account ID, a name, portfolio, original

15     creditor, placement, issuer number, open date, purchase

16     amount and current balance, do you see that?

17  A. Yes.

18  Q. Okay, and then it says account notes, do you see

19     that?

20  A. Yes.

21  Q. Okay, and then under the account notes, all the way in

22     the left hand side of the page, there are certain

23     dates, do you see those?

24  A. I see the dates.

1  Q. Okay.  So if you just go down to the second date, do

2     you see that?  It says 2012-07-31, do you see that?

3  A. Yeah, I see it.

4  Q. Then it has some other numbers, 09:11:28, do you see

5     that?

6  A. Yes.

7  Q. Okay, and what does that refer to?

8        MR. GUTOWSKI:  Did you see where he was referring?

9        THE WITNESS:  I thought I did.

10       MR. GUTOWSKI:  He's asking you if you know what that

11    refers to.

12       THE WITNESS:  No, I don't even know.

13

14 BY MR. GREENE:

15 Q. Okay.  Next to that it says UTC, do you know what that

16    means?

17 A. No.

18 Q. Okay, and then it has your name; right?

19 A. Yeah.

20 Q. And then it has what looks to be a phone number?

21 A. Okay.

22 Q. Do you see that?

23 A. Yes.

24 Q. And so did you call Jay Aitken on July 31, 2012 at 9:11

1    p.m. and reach an answering machine?

2  A. It don't say that.

3      MR. GUTOWSKI:  He's just asking you if you

4    remember.

5      THE WITNESS:  No, I don't remember.

6

7  BY MR. GREENE:

8  Q. Okay.  If it doesn't say that, what does it say?

9  A. It says at 3:01 p.m.

10      MR. GUTOWSKI:  I'll object to the form of that last

11    question as the document speaks for itself.

12

13  BY MR. GREENE:

14  Q. So when you contacted a debtor and talked to a debtor,

15    what -- are you supposed to make notes about the

16    conversation?

17      MR. GUTOWSKI:  Object to the form, you can answer

18    it.

19      THE WITNESS:  I must not have even really spoke to

20    the debtor because my manager at the time was on the

21    call.

22

23  BY MR. GREENE:

24  Q. Let me just ask the question again.  When you talk to

1    any particular debtor in the course of your day, what

2    are you supposed to do to record your conversation with

3    the debtor?

4        MR. GUTOWSKI:  Form, go ahead.

5        THE WITNESS:  To let them know that their call's

6    being recorded.

7

8    BY MR. GREENE:

9    Q. Okay, and after the call is over, are you supposed to

10   make any notes about the call?

11   A. Yes.

12       MR. GUTOWSKI:  Form.

13

14   BY MR. GREENE:

15   Q. And where do you make those notes?

16   A. On the account.

17   Q. And is that on the computer?

18   A. It looks to me that it's on the account.

19       MR. GUTOWSKI:  Let me just interrupt for a minute.

20   I just want the witness to be clear, Mr. Greene.

21   You're not referring specifically to this document, are

22   you?

23       MR. GREENE:  Correct.

24       MR. GUTOWSKI:  He's just talking about in general.

1

2  BY MR. GREENE:

3  Q. In general, when you talk to a debtor and you have a

4     conversation, what do you -- are you required by

5     Audubon to make notes about your conversation with the

6     debtor?

7        MR. GUTOWSKI:  Object to the form.

8        THE WITNESS:  Yes.

9

10  BY MR. GREENE:

11  Q. And do you make those notes on the computer?

12       MR. GUTOWSKI:  Form.

13       THE WITNESS:  Yes.

14

15  BY MR. GREENE:

16  Q. Okay.  So then turning to -- back to Exhibit 2, there's

17     a -- let's see, one, two, three, four, five, six, seven

18     dates down, it says 2012-08-03, do you see that?  I'm

19     sorry, I didn't get an answer

20       MR. GUTOWSKI:  She's trying to find where you

21     referred to.  For the record, the document has several

22     entries that begin with 2012-08-03.

23

24  BY MR. GREENE:

1  Q. So can you find the line where it says 2012-08-03 and

2     then the time is 3:01?

3  A. I found it.

4  Q. Okay.  So at 3:01 on August 3, 2012, did you call the

5     phone number 360-542-8373?

6  A. It says that I didn't.

7  Q. Do you have a recollection of doing that?

8  A. No, I don't remember.

9  Q. All right, and then Exhibit 2 says contacted debtor and

10     then there's kind of a description.  Is that something

11     you wrote?

12  A. No.

13  Q. So it says further down the line, it says TT BTR SD,

14     that he is going to SIS the ACCT, do you see that?

15  A. Yeah, I see it.

16  Q. Did you write that?

17  A. No.

18  Q. Do you know who did write it?

19  A. It says on the account, Mr. Doug.

20  Q. And who is Mr. Doug?

21  A. A manager that was terminated.

22  Q. Okay, and do you know if Mr. Doug -- well, strike that.

23        Why did Mr. Doug write this note and not you?

24        MR. GUTOWSKI:  Object to the form of the question.

1    If you know.

2        THE WITNESS:  He must have been on the account, but

3    I don't know.

4

5  BY MR. GREENE:

6  Q. Is it usual that if you talk to a debtor that a manager

7     would write the notes for the account?

8        MR. GUTOWSKI:  Object to the form.

9        THE WITNESS:  It says that I wasn't on the account,

10    so he -- it says my name but it clearly tells you that

11    Doug was on the account.  I wasn't.

12

13  BY MR. GREENE:

14  Q. And how does it tell you that you weren't on the

15    account?

16  A. It says Mr. Doug, talked to debtor.

17  Q. So you're saying that you -- that you never talked to

18    Mr. Aitken on August 3, 2012 at 3:01 p.m.?

19  A. I don't remember, but from the looks of it, I don't

20    remember ever talking to Mr. Aitkens.

21  Q. Do you know if you ever called Mr. Aitkens?

22  A. Yes, clearly.

23  Q. Just in general, when you call a debtor and you get the

24    debtor on the phone, is there any circumstance where

1    you would, where you would ask a manager or a manager

2    would get on the phone for some reason and talk to the

3    debtor instead of you?

4        MR. GUTOWSKI:  Object to the form of the question.

5    Go ahead.

6        THE WITNESS:  Yeah.

7

8    BY MR. GREENE:

9    Q. And what would those occasions be?

10   A. I could have had another call.

11   Q. Is that the only occasion?

12   A. Unless I have to use the bathroom.

13   Q. Any other reason?

14   A. No.

15   Q. Do you know Manager Doug's last name?

16   A. No.

17   Q. So if Audubon in a court document told me that you had

18      talked to Mr. Aitken, that would be incorrect?

19       MR. GUTOWSKI:  Object to form.

20       THE WITNESS:  I don't remember.

21

22   BY MR. GREENE:

23   Q. No, I -- well, does Exhibit 2 refresh your recollection

24      about whether you talked to Mr. Aitken?

1   A. No.

2   Q. So if you don't remember, why did you testify earlier

3      that it was the manager Doug that talked to

4      Mr. Aitken?

5   A. It says it right on the account.

6   Q. Okay.  So what you're saying is that you did not talk

7      to Mr. Aitken and that the manager Doug talked to

8      Mr. Aitken?

9         MR. GUTOWSKI:  Object to the form, that's not her

10        testimony.  She said she didn't remember.

11

12  BY MR. GREENE:

13  Q. Well, let me put it this way, did you talk to

14     Mr. Aitken on August 3 at 3:01 in the afternoon?

15        MR. GUTOWSKI:  He's asking you if you talked to him.

16     If you know, you can answer the question.

17        THE WITNESS:  No.

18

19  BY MR. GREENE:

20  Q. So if Audubon says that you did, that would be

21     incorrect?

22        MR. GUTOWSKI:  Object to the form.

23        THE WITNESS:  I don't remember this person at all

24     and if I talked to this person, I would have documented

1      it on the account like I do every account.

2

3    BY MR. GREENE:

4    Q. Do you know who Andrew Fanelli is?

5    A. No.

6         MR. GREENE:  Okay.  I have no further questions.

7         (Whereupon, the examination was concluded at 11:28

8         a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1    STATE OF NEW YORK)
                     )   ss.
2    COUNTY OF ERIE   )

3
     I, Kelly S. Hairston, Notary Public, in and for the County
4    of Erie, State of New York, do hereby certify:

5
          That the witness whose testimony appears hereinbefore
6    was, before the commencement of their testimony, duly
     sworn to testify the truth, the whole truth and nothing
7    but the truth; that said testimony was taken pursuant to
     notice at the time and place as herein set forth; that
8    said testimony was taken down by me and thereafter
     transcribed into typewriting, and I hereby certify the
9    foregoing testimony is a full, true and correct
     transcription of my shorthand notes so taken.

10
11        I further certify that I am neither counsel for nor
     related to any party to said action, nor in any way
12   interested in the outcome thereof.

13
14        IN WITNESS WHEREOF, I have hereunto subscribed my
     name and affixed my seal this 13th day of January      ,
15   2014.

16
17   _____
     Kelly S. Hairston
18   Notary Public,
     State of New York, County of Erie
19   My commission expires 08/13/15.

20
21
22
23
24
```

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

JAY AITKEN, )
)
          Plaintiff, )
)    12-cv-1511
       vs. )
)
DEBT MANAGEMENT PARTNERS, LLC, )    Magistrate Judge John A. Gorman
AUDUBON FINANCIAL BUREAU )
and FANELLI AND ASSOCIATES LLC )
)
          Defendants. )

## PLAINTIFF'S AMENDED ANSWERS TO DEFENDANTS'
## INTERROGATORIES TO PLAINTIFF

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Jay Aitken ("plaintiff") hereby

responds to the First Set of Interrogatories of Debt Management Partners, LLC and Audubon

Financial Bureau ("defendants") as follows:

    1.     State your name, and any other nickname of alias you have ever used, your date and

place of birth, marital status and spouse's name, social security number, driver's license number and

issuing state, and your current residential address.

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not
reasonably calculated to lead to the discovery of admissible evidence. Subject to and
without waiving this objection, plaintiff states as follows:

Jay Jonathan Aitken. DOB: 5/6/66; Last four digits of plaintiff's social security
number: 9745; current address: 100 Baypoint Dr., East Peoria, ILL 61611.

    2.     Provide your residential address for the past ten years.

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not
reasonably calculated to lead to the discovery of admissible evidence. Subject to and
without waiving this objection, plaintiff states as follows:

1

Plaintiff has lived at 100 Baypoint Dr., East Peoria, Ill since July 2010.

3.     Describe your education, and any professional training you have received, including the names and addresses of any educational institutions you have attended, the dates of attendance, and any degrees, diplomas or certificates you have received. State whether you have ever been the subject of any disciplinary proceeding at any school or institution listed in this answer.

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, plaintiff states as follows: Plaintiff graduated from Far Eastern Academy in the Republic of Singapore in May 1984. He attended Pacific Union College in Angwin, California between approximately August 1986 and May 1987. Plaintiff attended Lake Michigan College in Benton Harbor, Michigan between approximately September 1993 and May 1994.

4.     List any occupation or job you have held in the past ten years, and also the follow information about these jobs:

a. the full name and addresses of the employer.

b. the starting date and termination date for each job.

c. a brief description of your job and the duties you performed.

d. your average weekly wages or earnings at each job.

e. the reason for termination or leaving each job.

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff is not seeking damages for lost income or wages. Subject to and without waiving this objection, plaintiff states that he has been unemployed since May 2011. Between March 2008 and May 2011, plaintiff was employed as an electronic medical records coordinator at OSF Medical Group, 1420 West Pioneer Parkway, Peoria, IL 61615. Plaintiff ceased his employment at OSF Medical Group in order to stay at home and look after his child.

5. State your annual income as reported to the Internal Revenue Service for the last three calendar years (2012, 2011, and 2010).

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff is not seeking damages for lost income or wages.

6. Have you ever been involved in any civil lawsuit or action, either as a defendant or plaintiff, including divorce proceedings and worker's compensation cases? If so, then state the following:

a. the date and place each action was filed, and the case or docket number of all such actions.

b. a description of the nature of each case, including the names of the parties involved.

c. the names of the lawyers representing each party.

d. the disposition of each case, including the amount of settlement or judgment obtained or awarded in the case.

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, plaintiff states as follows: Plaintiff was named as a defendant in an action in Napa County, California in 1986 or 1987 in connection with a one-vehicle motor vehicle accident. Plaintiff does not recall any of the details. The case was subsequently dismissed without prejudice.

7. Have you ever been arrested for any crime, including minor traffic offenses or local ordinance violations, in Illinois or anywhere else, in the ten year period before you filed this lawsuit? If so, then for each arrest or case, state the following:

a. the date and location of each arrest.

b. the charge(s) placed against you.

c. the name and location of the court that prosecuted you in any of these cases.

d. the disposition or outcome of the case, including any fine that was imposed or

sentence that you had to serve.

e. the name and address of any attorney who represented you.

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, plaintiff states as follows: Plaintiff received a parking ticket approximately one month ago.

8.    State the full name, date of birth, residential address, and telephone number of any

person who has witnessed or claimed to have witnessed, or otherwise has any knowledge or

information concerning the allegations you have made in this lawsuit. This includes any persons

who have knowledge of any damages you have suffered. For each person listed, state the nature

and substance of what that person witnessed and what knowledge or information that person has

concerning the allegations you have made in this lawsuit. Also, state the nature of your

relationship with each person (e.g. friend, neighbor, parent, sister etc...).

**RESPONSE:** Plaintiff Jay Aitken has knowledge of the intense emotional distress he experienced as a result of defendants' representations that he would be arrested and jailed if he did not pay the Cash Store debt. Mr. Aitken will testify that, as a result of defendants' threats, he contacted an attorney who could bail him out of jail. He also can testify to (1) taking the number off his house so authorities would not be able to find him, (2) asking neighbors not to disclose where he lived, and (3) directing all mail deliveries to a P.O. Box, (4) disconnecting the phone for a brief period of time, (5) making sure there was enough money in savings to be able to post bail. Making sure there was enough money in the bank to post bail was especially difficult because of the numerous medical bills that we had to pay in connection with the medical treatment of our baby who was born premature.

Mr. Aitken can also testify to his loss of sleep and appetite as a result of defendants' threats. Plaintiff also suffered an increase in anxiety, fear,

4

embarrassment, humiliation, irritability, marital strife, anger and nervousness. Plaintiff was anxious and fearful over what would happen to his 16 month old baby, who he was primarily responsible for taking care of during the day, if he were arrested. Plaintiff was also embarrassed and humiliated by having to explain to his parents why they were receiving calls from defendants. Plaintiff's wife, Jill Aitken, can testify to plaintiff's emotional distress including his trepidation when the telephone would ring.

Patrick T. Chambers, Johnson Bunce & Noble PC, 7800 N. Sommer St., Suite 424, Peoria, IL 60615. Tel: (309) 691-0910. Mr. Chambers may have knowledge of being contacted by Mr. Aitken after Mr. Aitken was threatened with arrest by a collector employed by defendant Audubon Financial Bureau.

Plaintiff's mother, Judy Aitken, 5810 Shanghai Road, Eau Claire, Michigan 49111, has knowledge of being called by representatives of defendants.

Brian Robinson, 3908 N. Illinois Avenue, Peoria Heights, IL 61616, has knowledge of being asked by Jay Aitken not to disclose Mr. Aitken's whereabouts.

9.     Have you received any medical care or treatment, counseling, or help of any kind from a professional for the injuries (physical, emotional or mental) you claim to have suffered in this case? If so, then provide the following information:

a. The full name, address, and telephone number of any physician or health care practitioner, hospital or medical institution that rendered any services to you.

b. The date or dates of examination, care or treatment by each such physician or other  health care practitioner or hospital and the reason for such treatment or hospitalization.

c. A description of the care or treatment that was provided to you by each physician or health care practitioner.

d. List any expenses incurred by you for any such treatment, and include the

portion of expenses that has been paid, and the name and addresses of any person

that has paid any portion of said expense.

e. The amounts to date of any bills that you have received for any services or

treatment you have received, whether or not the bills have been paid.

**RESPONSE:** Plaintiff shared his intense anxiety about defendants' threats with his late father who had a Masters degree in counseling. Plaintiff wanted to see a counselor during this time but could not afford to do so.


10. Are you claiming any psychological and/or emotional injuries, or psychiatric

injuries, as a result of the allegations you have made in this lawsuit? If so, then state the

following:

a. The name of any psychiatric, psychological, and/or emotional injury claimed,

and the name and address of any doctor, psychiatrist, psychologist, therapist or

other health care professional who has treated you.

b. Whether you had suffered any psychiatric, psychological, and/or emotional

injury prior to the conduct you are complaining about in this lawsuit.

c. If your answer to subparagraph (b) immediately above is in the affirmative, then

state the nature of any psychiatric, psychological and/or emotional injury and also

the name and address of any health care professional who has treated you for it.

**RESPONSE:** See plaintiff's response to interrogatory 8. Plaintiff has not suffered any prior psychiatric, psychological and/or emotional injury prior to being threatened with arrest and jail by defendants.

11. Are you asserting any claim for lost wages or other lost income in this lawsuit? If so, please state the following:

      a. The nature and extent of any lost wages or income.

      b. The manner in which the lost wages or income have been calculated by you.

      c. The name and address of any persons who would have knowledge or information of these losses (e.g. employer).

**RESPONSE:** No.

12.      Identify any payday loan that you have obtained in the time period from January 1, 2010 to August 3, 2012, the amount of each loan, the date it was obtained, and the place where you applied for and obtained this loan.

**RESPONSE:** To the best of plaintiff's recollection, the only payday loan he obtained between January 1, 2010 and August 3, 2012 was a payday loan he obtained in the amount of $2,000 on January 4, 2010 from the Cash Store at 175 N. Main St., E. Peoria, IL 61611. The loan was refinanced on or about December 31, 2010.

13. In paragraph 15 of your second amended complaint, you allege that you received a series of phone calls from the Defendants. State whether or not you have audio recordings of any of these calls, and if so, which ones.

**RESPONSE:** Plaintiff does not have any audio recordings of calls from defendants. He does have a recording of a message left by Fanelli & Associates, left in January 2013.

14. Your second amended complaint asks the Court to award you "actual damages." State what your actual damages are.

**RESPONSE:** See the answer to interrogatory no. 8.

15. State whether you have ever filed for bankruptcy; and if you have, state the date and the court where you filed.

**RESPONSE:** No.

16. Identify any current debt that you currently owe (home or mortgage loan, student loan, credit card debt, bank loan, home equity loan, installment loan, etc...) and the name of the person or entity to whom you owe that debt. Also, list the amount of any debt that you owe.

**RESPONSE:** Plaintiff objects to the extent the information requested is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

17. Identify any debt that you owed in August 2012, the name or entity you owed the debt to and the amount of any debt at the time.

**RESPONSE:** In the 30 days prior to the August 3, 2012 call, plaintiff believes his only outstanding debt was the Cash Store debt. In 2012, Mr. Aitken was dunned from time to time by AFNI, Inc. for debts originally owed to OSF Medical Center. Plaintiff believes that there were two or three such debts and the approximate amount of each debt was $80. Also in 2012, Mr. Aitken's wife, Jill Aitken, had at least two outstanding debts, a student loan debt and a payday loan.

18. State the name, address and phone number or any person who participated in answering these interrogatories with you, and which person contributed to answering which question.

**RESPONSE:** Plaintiff was assisted in responding to these interrogatories by his counsel, Francis R. Greene.

19. List the name and address of each person you intend to present as a witness at the trial of this case, and the substance of what each witness will testify to.

**RESPONSE:** Plaintiff objects to this interrogatory as premature. Plaintiff will supplement this response in accordance with applicable rules and court orders.

Francis R. Greene

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## VERIFICATION

I, Jay Aitken, certify under penalty of perjury as provided for by 28 U.S.C. 1746 that the foregoing amended answers to Defendants' Interrogatories to Plaintiff are true to the best of my knowledge and belief.

_____
Jay Aitken

## CERTIFICATE OF SERVICE

I, Francis R. Greene, hereby certify that on February 28, 2014, I caused a true and accurate copy of **PLAINTIFF'S AMENDED ANSWERS TO DEFENDANTS' INTERROGATORIES TO PLAINTIFF** to be served via email upon the following party:

Thomas P. Needham
tpn@needhamlaw.com

Francis R. Greene

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

JAY AITKEN,                             )

                          )

          Plaintiff,               )       Case No. 12 CV 1511

                          )

         vs.                    )       Judge Mihm

                          )

DEBT MANAGEMENT PARTNERS, LLC and   )

AUDUBON FINANCIAL BUREAU,        )       Magistrate Gorman

                          )

          Defendants.           )

## DEFENDANTS' RESPONSE TO PLAINTIFF'S INTERROGATORIES

Defendants Audubon Financial Bureau, LLC and Debt Management Partners, through their attorney, Thomas P. Needham, hereby respond to the interrogatories issued by Plaintiff:

Preliminary statement of Defendants

Defendants respond to Plaintiff's Interrogatories based upon the information that is currently available to it; further investigation may disclose additional information and thus Defendants reserve the right to revise, correct, supplement or clarify and of the responses below if it is appropriate to do so.

Plaintiff's Interrogatory No. 1

"Identify each person involved in answering these Interrogatories and the information supplied by each."

ANSWER: Defendants object to this interrogatory because it seeks information covered by the attorney work product privilege and the attorney client privilege. '

Defendants also object to this interrogatory on the grounds that it is not reasonably

1

calculated to lead to the discovery of any evidence admissible at trial. Subject to and without waiving these objections, Defendants respond by stating that the answers to these interrogatories were prepared with the assistance of Daniel Valentine, 200 James Audubon Parkway, Amherst, N.Y., 14068.

Plaintiff's Interrogatory No. 2

"State the name, address, title and job description of each person acting on behalf of Debt Management Partners who telephoned plaintiff."

ANSWER:  No person acting on behalf of Debt Management Partners has ever telephoned plaintiff.

Plaintiff's Interrogatory No. 3

"State the name, address, title and job description of each person acting on behalf of Audubon Financial Bureau who telephoned plaintiff."

ANSWER: Amanda Mottorn and Chantel Munn, collectors, both can be contacted through Defendants' counsel; Camia Henderson, no longer employed by Audubon Financial Bureau, her address is 221 Hempstead Street, Buffalo, NY.

Plaintiff's Interrogatory No. 4

"State the name, address, title and job description of the person or persons acting on behalf of Debt Management Partners who talked with plaintiff by telephone on August 3, 2012."

ANSWER:  No person acting on behalf of Debt Management Partners talked with plaintiff by telephone on August 3, 2012.

Plaintiff's Interrogatory No. 5

"State the name, address, title and job description of the person or persons acting on behalf of Audubon Financial Bureau who talked with plaintiff by telephone on August 3, 2012."

ANSWER: Amanda Mottern, collector. She can be contacted through Defendants' counsel.

Plaintiff's First Interrogatory No. 6

"Explain the basis for your claim that any violation alleged in the complaint was unintentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures are maintained and how they are adapted to avoid the matters complained of."

ANSWER: Defendants object to this interrogatory, because the language that plaintiff uses in it is not contained in Defendants answer to the complaint, and therefore the reference to "your claim" is not accurate. If plaintiff intends to refer to Defendants' statement "B" on page 14 of its answer, then Defendants state that Audubon Financial Bureau trains its employees on the provisions of the Fair Debt Collection Practices Act and has a written policy encouraging its employees to follow the law.

Plaintiff's First Interrogatory No. 7

"With respect to each expert whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation and current employment; (b) the subject matter of his

expertise; (c) his educational background, degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all the facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for such an opinion."

ANSWER: At this time, Defendants do not intend on calling any expert witness at the trial of this case, which is set for trial on June 23, 2014. However, Defendants note that the date for the close of discovery in this case is not until October 24, 2013, and that Defendants reserve the right to identify an expert witness if necessary to rebut any expert that plaintiff discloses he will call at trial.

Plaintiff's Second Interrogatory No. 6

"Describe the relationship between Debt Management Partners, LLC and Audubon Financial Bureau."

ANSWER: Debt Management Partners, LLC is a limited liability company that owns Audubon Financial Bureau. Debt Management Partners, LLC is in the business of buying and selling debt portfolios. It places some of the accounts that it purchases with debt collection companies. Audubon Financial Bureau is one of the debt collection companies that Debt Management Partners, LLC has a relationship with for the purposes collecting debts.

Plaintiff's Second Interrogatory No. 7

"Identify all formal and informal contracts and agreements between Debt Management Partners, LLC and Audubon Financial Bureau relating to the collection of debts."

**ANSWER:** Debt Management Partners, LLC and Audubon Financial Bureau are parties to a written contract, and entered into this contract on August 5, 2011.

Plaintiff's Interrogatory No. 8

"Describe the training in compliance with the Fair Debt Collection Practices Act provided by Debt Management Partners, LLC to its collectors."

**ANSWER:** Debt Management Partners, LLC does not provide training to "its collectors" because it does not have any collectors. It is a limited liability company whose principal business is purchasing and selling debt portfolios.

Plaintiff's Interrogatory No. 9

"Describe the training in compliance with the Fair Debt Collection Practices Act provided by Audubon Financial Bureau to its collectors."

**ANSWER:** When Audubon Financial Bureau hires new employees, the provisions of the Fair Debt Collection Practices Act are explained to them by supervisors, and further described in an employee manual that all employees are given. New employees are also given a test concerning the Fair Debt Collection Practices Act. Instruction on this law continues as the need arises in response to questions that employees ask as they perform their jobs.

RESPECTFULLY SUBMITTED,

Thomas P. Needham
Attorney for Defendants

Law Office of Thomas P. Needham
53 W. Jackson Blvd. Suite 452
Chicago, IL 60604
(312) 726-3171
tpn@needhamlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

JAY AITKEN,                      )

                                    )

        Plaintiff,            )     Case No. 12 CV 1511

                                      )

        vs.                  )     Judge Mihm

                                      )

DEBT MANAGEMENT PARTNERS, LLC and     )

AUDUBON FINANCIAL BUREAU,       )     Magistrate Gorman

                                      )

        Defendants.        )

## VERIFICATION

I hereby verify that the information contained in Defendants' responses to Plaintiff's interrogatories is true and accurate to the best of my knowledge.

                                     Daniel Valentine

Dated:   08/ 28/ 2013

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JAY AITKEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12-cv-1511 |
| vs. | ) | |
| | ) | |
| DEBT MANAGEMENT PARTNERS, LLC, | ) | Magistrate Judge Jonathan E. Hawley |
| AUDUBON FINANCIAL BUREAU | ) | |
| and FANELLI AND ASSOCIATES LLC | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DANIEL A. EDELMAN

I, Daniel A. Edelman, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true:

1.      I am over the age of 18 years old and the testimony contained herein is based on my personal knowledge.

2.      I am the managing partner of the law firm of Edelman, Combs, Latturner & Goodwin, LLC.

3.      On June 23, 2014, in connection with the filing of the reply by plaintiff in support of his motion for summary judgment on liability, I accessed the web site, www.judici.com. Judici.com, *inter alia,* allows searches to be performed of cases filed by a particular party in the courts of a majority of counties in Illinois.

4.      At the judici.com website, I did a search of lawsuits filed by each defendant in the circuit courts of the counties that appear on the list attached hereto as Appendix A. I performed the search by entering the names of defendants into a search box.

1

5. Neither search yielded any lawsuits filed by defendants in the selected Illinois counties at any time. Appendix B hereto is a true and correct copy of what appeared on my computer screen after searching for cases filed by Audubon Financial Bureau, LLC. Appendix C hereto is a true and correct copy of what appeared on my computer screen after searching for cases brought by Debt Management Partners, LLC.

6. Also on June 23, 2014, I accessed the website of the Peoria County Circuit Court at justice.peoriacounty.org and did a search in the "Civil Case Records" database of cases filed by defendants. Neither search yielded any lawsuits filed by defendants at any time. Appendix D hereto is a true and correct copy of what appeared on my computer screen after searching for Audubon Financial Bureau, LLC. Appendix E hereto is a true and correct copy of what appeared on my computer screen after searching for Audubon Financial Bureau, LLC.

Date: June 23, 2014

_____
Daniel A. Edelman



# APPENDIX A

This page is operated by Judici.com, not a court. Links to this page do not constitute endorsement b

# Participating Courts

For free access to a single court's website, follow the appropriate hyperlink below.

For access to more than one court and one case at a time, check out our subscription services.
Background-check agencies choose our Multicourt subscription in order to search multiple courts simultaneously.
Attorneys choose our Courtlook subscription to get case lists and court schedules automatically customized for the cases on which they are attorney of record.

Search: | Select Court... ▼ | Go

| Court | E-filing | Documents | E-Pay | E-Plea |
|-------|----------|-----------|-------|--------|
| Adams County, IL | | | | |
| Alexander County, IL | | | | |
| Bond County, IL | | | | |
| Boone County, IL | | | | |
| Brown County, IL | | | | |
| Bureau County, IL | | | | |
| Carroll County, IL | | | | |
| Christian County, IL | | | | |
| Clark County, IL | | | | |
| Clay County, IL | | | | |
| Clinton County, IL | | | | |
| Coles County, IL | | | | |
| Crawford County, IL | | | | |
| Cumberland County, IL | | | | |
| DeWitt County, IL | | | | |
| Douglas County, IL | | | | |
| Edgar County, IL | | | | |
| Edwards County, IL | | | | |
| Effingham County, IL | | | | |
| Fayette County, IL | | | | |
| Ford County, IL | | | | |
| Franklin County, IL | | | | |
| Grundy County, IL | | | | |
| Hamilton County, IL | | | | |
| Henry County, IL | | | | |
| Iroquois County, IL | | | | |
| Jackson County, IL | | | | |
| Jefferson County, IL | | | | |
| Jersey County, IL | | | | |
| Jo Daviess County, IL | | | | |
| Johnson County, IL | | | | |
| Lawrence County, IL | | | | |
| Lee County, IL | | | | |
| Livingston County, IL | | | | |
| Logan County, IL | | | | |
| Macoupin County, IL | | | | |
| Marion County, IL | | | | |
| Marshall County, IL | | | | |
| Mason County, IL | | | | |
| Massac County, IL | | | | |
| Mercer County, IL | | | | |
| Montgomery County, IL | | | | |
| Morgan County, IL | | | | |
| Moultrie County, IL | | | | |
| Ogle County, IL | | | | |
| Piatt County, IL | | | | |
| Pike County, IL | | | | |
| Pope County, IL | | | | |

| |
|---|
| Pulaski County, IL |
| Putnam County, IL |
| Randolph County, IL |
| Richland County, IL |
| Rock Island County, IL |
| Saline County, IL |
| Schuyler County, IL |
| Shelby County, IL |
| Stark County, IL |
| Stephenson County, IL |
| Tazewell County, IL |
| Union County, IL |
| Vermilion County, IL |
| Wabash County, IL |
| Washington County, IL |
| Wayne County, IL |
| White County, IL |
| Whiteside County, IL |
| Williamson County, IL |
| Woodford County, IL |

For questions or comments about this web site, please see our Contacts Page.

Terms of use | Privacy policy

Advertise on Judici.

Copyright © 2002-2014 Judici

Last modified: 2014/06/06 12:43 Version: 3.8.1.0



**APPENDIX B**

This page is operated by Judici.com, not a court. Links to this page do not constitute endorsement b

| Judici.com News |
|---|
| **06/18/2014** - We are happy to announce that E-Pay is now available in Pulaski County, IL. through Judici. |
| **05/23/2014** - We are happy to announce that court data from Brown County, Illinois is now available on Judici. The dates for the available cases is listed in our FAQ. |
| **04/14/2014** - We are happy to announce that court data from Randolph County, Illinois is now available on Judici. The dates for the available cases is listed in our FAQ. |
| **04/06/2014** - E-filing and online case file document access are now available in various courts. Keep an eye on the Courts page to see which courts offer these services. For more information on these and other services offered to the legal profession, check out our Courtlook and E-Filing pages. |
| **03/05/2014** - We are happy to announce that E-Pay is now available in Massac County, IL. through Judici. |

## Multicourt

Your stated purpose, with regards to the FCRA, is: **Non-FCRA Usage**. (more...)

Choose another purpose

**No matches found**

## Search Hints

**Wildcards:**

- '*' Replaces ALL following letters (Judici automatically adds this to the end of all search strings)
- '?' Replaces ONLY ONE letter

**Case:**

- You **must** give more than just a case type.

Examples:

- *1999CF21* would return case number 1999CF21
- *1999L\** would return law cases filed in 1999 even those seeking smaller damages, filed as LM

**Name:**

- Must be at least 3 letters long. If searching for a two-letter last name, use the comma as the third letter.
- The format is Last name, First name MI
- Capitalization does not matter
- Partial/wildcard searches are allowed

Examples:

- *smith, j* or *smith, j\** would return Smith, Jim and Smith, James
- *jones, terr?* would return Jones, Terry and Jones, Terri
- *power?,\** would return people with the last name Power and Powers, but not Powerson
- *power* or *power\** would return Power, Powers, AND Powerson

**Charge Text:**

- Must be used as part of a multi-field search.

**Multi-field searches:**

- Two or more of the search fields can be combined

Example:

- *L* in the Case field and *jones, james c* in the Name field will return all law cases for a person of that name in any court

**Viewing hints:**

- To sort the search results by any column, click on the column heading. Click again to toggle between ascending and descending sorts.

- For a single case- click on the case number

- For a list of all cases for a particular name - click on the name

- For a multi-case composite litigation history (premium content for subscribers only) - check off multiple cases, then click 'Get Selected' button

For questions or comments about this web site, please see our Contacts Page.

Terms of use | Privacy policy

Advertise on Judici.

Copyright © 2002-2014 Judici

Last modified: 2014/06/06 12:43 Version: 3.8.1.0

# APPENDIX C

This page is operated by Judici.com, not a court. Links to this page do not constitute endorsement b

My

| Judici.com News: |
|---|
| **06/18/2014** - We are happy to announce that E-Pay is now available in Pulaski County, IL. through Judici. |
| **05/23/2014** - We are happy to announce that court data from Brown County, Illinois is now available on Judici. The dates for the available cases is listed in our FAQ. |
| **04/14/2014** - We are happy to announce that court data from Randolph County, Illinois is now available on Judici. The dates for the available cases is listed in our FAQ. |
| **04/06/2014** - E-filing and online case file document access are now available in various courts. Keep an eye on the Courts page to see which courts offer these services. For more information on these and other services offered to the legal profession, check out our Courtlook and E-Filing pages. |
| **03/05/2014** - We are happy to announce that E-Pay is now available in Massac County, IL. through Judici. |

## Multicourt

Your stated purpose, with regards to the FCRA, is: **Non-FCRA Usage**. (more...)

Choose another purpose

**No matches found**

## Search Hints

**Wildcards:**

- '*' Replaces ALL following letters (Judici automatically adds this to the end of all search strings)

- '?' Replaces ONLY ONE letter

**Case:**

- You **must** give more than just a case type.

Examples:

- *1999CF21* would return case number 1999CF21

- *1999L\** would return law cases filed in 1999 even those seeking smaller damages, filed as LM

**Name:**

- Must be at least 3 letters long. If searching for a two-letter last name, use the comma as the third letter.

- The format is Last name, First name MI

- Capitalization does not matter

- Partial/wildcard searches are allowed

Examples:

- *smith, j* or *smith, j\** would return Smith, Jim and Smith, James

- *jones, terr?* would return Jones, Terry and Jones, Terri

- *power?,\** would return people with the last name Power and Powers, but not Powerson

- *power* or *power\** would return Power, Powers, AND Powerson

**Charge Text:**

- Must be used as part of a multi-field search.

**Multi-field searches:**

- Two or more of the search fields can be combined

Example:

- *L* in the Case field and *jones, james c* in the Name field will return all law cases for a person of that name in any court

**Viewing hints:**

- To sort the search results by any column, click on the column heading. Click again to toggle between ascending and descending sorts.

- For a single case- click on the case number

- For a list of all cases for a particular name - click on the name

- For a multi-case composite litigation history (premium content for subscribers only) - check off multiple cases, then click 'Get Selected' button

For questions or comments about this web site, please see our Contacts Page.

Terms of use | Privacy policy

Advertise on Judici.

Copyright © 2002-2014 Judici

Last modified: 2014/06/06 12:43 Version: 3.8.1.0

# APPENDIX D

justice.peoriacounty.org

← → C  justice.peoriacounty.org/search.aspx?ID=200&NodeID=100%2C150%2C1190%2C1=500%2C210%2C150%2C140%2C240%2C140%2C240%2C140%2C240%2C2=15PeoriaDev.+Peoria+County

::: Apps  ⊕ Getting Started  ☐ Latest Headlines  ☐ Research  ☐ Courts  ☐ Government Agencies  ☐ Miscellaneous  ☐ Imported From Firef...

## Civil Case Records Search Results

Back to Main  Content  Logout  My Account  Search Menu  New Full Search  Refine Search

Record Count: 0
Search By: Party  Search Mode: Business Name  Last Name: Augason Financial Bureau LLC  Sort By: Filed Date

Location : Peoria County  Help

| Case Number | Style | Filed Location | Type/Status |
|---|---|---|---|

No cases matched your search criteria.

# APPENDIX E

justice.peoriacounty.org ×    × Convert: JP ! to PDF to ↑ ×
← → C    □ justice.peoriacounty.org

:: Apps    ⊛ Getting Started    □ Latest Headlines    □ Research    □ Courts    □ Government Agencies    □ Miscellaneous    □ Imported From Fired

# Civil Case Records Search Results

Go To Main Control Panel By Account Search Menu New Civil County Parties Search

Record Count: 0                                                                                               Location : Peoria County  Help
Search By: Party  Party Search Mode: Business Name  Last Name: Debt Management Partners  LLC    Sort By: Filed Date
Case Number                                                  Style                                    Filed Location                    Type Status

No cases matched your search criteria.