IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAY AITKEN,<br>  Plaintiff,<br><br>v.<br><br>DEBT MANAGEMENT PARTNERS,<br>LLC and AUDUBON FINANCIAL<br>BUREAU,<br>  Defendants. | Case No. 1:12-cv-01511-JEH |

### Opinion

Now before the Court is the Plaintiff's Motion for Summary Judgment on Liability (Doc. 47) and the Defendants' Motion for Summary Judgment on Actual Damages (Doc. 46). The Motions are fully briefed, and for the reasons set forth below, the Defendants' Motion for Summary Judgment is DENIED and the Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

### I

The Plaintiff, Jay Aitken, borrowed $2,000 from the Cash Store, a "payday" loan purveyor in East Peoria, Illinois. Defendant Debt Management Partners, LLC (DMP) is a debt collector, particularly, it purchases delinquent credit accounts and places the accounts with collection agencies to collect on its behalf. Defendant Audubon Financial Bureau (Audubon) is also a debt collector. In particular, it is in the business of collecting consumer debts originally owed to others. From June 2011 through August 2011, the Plaintiff received automated phone calls at his home from the Cash Store's headquarters regarding payment of his payday loan. Then, in early 2012 through May or June 2012, the Plaintiff received phone calls at his home from the Bennett Law Firm regarding full repayment of his payday loan. In July 2012, the Plaintiff's Cash Store debt was placed with Audubon to collect. DMP appointed Audubon as its collection agent for the Collections of Consumer Charged-Off Accounts. Audubon's policy

1

manual instructs its collectors in the event the debtor refuses or avoids the collectors to contact the debtor's 1) parents; 2) grandparents, aunts, uncles, and cousins; 3) neighbors; and 4) place of employment.

Also in July 2012, the Plaintiff received a phone call from a DMP employee who agreed to let him make a series of installment payments on his payday loan. However, though the Plaintiff initially believed that DMP would allow payment on the debt in installments, he was not permitted to do so and was subsequently told he could not pay in installments when he attempted to make the first installment payment. Audubon's account notes show that someone at Audubon had a conversation with the Plaintiff on August 3, 2012.

The Plaintiff testified during his deposition that he received a call from someone who identified herself as "Monica" on August 3, 2012 who accused him of having "willingly defrauded the Cash Store of money," that doing so was "considered a Class I felony," and that "[p]eople go to jail for that." He testified that Monica also asked him for his current address and place of employment because either place would be an appropriate place to "serve" him. The Plaintiff also testified that during the August 3rd call he was transferred to a man who identified himself as Frank Salvasio, who was further identified as an in-house attorney. The Plaintiff said that Salvasio offered him an opportunity to pay the Cash Store debt in monthly installments and that the offer should be accepted because "if we face you in court in Peoria you will pay 10 times that amount in attorney fees and such." The Plaintiff says that following the August 3rd phone call, he became very fearful he would face arrest because of the debt and would not be able to post bail.

The Defendants counter that there is no evidence in the record to corroborate the Plaintiff's claims that he spoke with "Monica" and Frank Salvasio on August 3, 2012. The Defendants point to Audubon bill collector Amanda Mottron's deposition testimony during which she denied that she ever spoke to the Plaintiff by phone on August 3rd, and the Defendants cite to Audubon's call log which indicates that the

2

Plaintiff spoke to a man named Doug who noted, among other things, "good convo . . . feel strong about resolution."

On August 6, 2012, the Plaintiff received a voice message that referenced a phone number belonging to Audubon regarding his Cash Store debt. The message stated:

> Hi, this message is for Jay Aitken. My name is Monica. I'm calling in regards to what we had spoken to you about on Friday. Please give our office a call immediately today at 1-888-896-2115, extension 111. Thank you.

The Plaintiff received another voice message on August 31, 2012 from the same phone number that left him the voice message on August 6, 2012. That message stated:

> Hi. This message is for Jay Aitken. My name is Monica. I'm with the A and B Fraud Division. Jay, um, I did speak with you a couple of weeks ago. Um, you stated in a federally recorded line you wanted to take care of this matter. Obviously you had no intentions taking care of this matter, because we have not spoken with you since. I don't know if you felt that just because we dropped the judgment that you'd be OK, and you wouldn't have to go to court on the account. Um, as of today, if there is not a payment in this office, we will be sending you to court. You will be served at your homestead. If you can make a payment today, please give our office a call at 1-888-506-1740, extension 111.

In August or September 2012, the Plaintiff contacted an attorney, Patrick Chambers, about the Defendants' phone calls and specifically about whether Attorney Chambers could assist him in posting bail. Attorney Chambers told the Plaintiff not to worry about the Defendants' collection efforts because it was unlikely that they would file a lawsuit against him. They spoke for about five minutes total. Nevertheless, the Plaintiff did save money by clipping coupons and trying to be a bit more frugal in case he was arrested and needed to post bail. He also tried to keep $1,000 in his checking account which could be used to post bail, and he set up an arrangement with his father to help him post bail in the event the Plaintiff was jailed. In November 2012, the Plaintiff disconnected his phone because he was worried about the Defendants' phone calls. He also had a conversation with his mail carrier, Brian Robinson, expressing his concern that someone might be looking for him. The Plaintiff attempted to keep a low

3

profile by maintaining a post office box and picking up his mail after hours, by taking the numbers off of his house, and by asking Robinson not to disclose to anyone where the Plaintiff lived. The Plaintiff did not seek any medical treatment, psychiatric treatment, or professional counseling regarding the Defendants' phone calls. He did talk to his father, who had a degree in counseling, about his intense anxiety at being jailed.

On December 14, 2012, the Plaintiff filed his Complaint against DMP and Audubon Financial Group, LLC pursuing four counts against the Defendants including: 1) a violation of the Fair Debt Collection Practices Act (FDCPA), Section 1692e, 2(A), (4), (5), (7), and (10) and Section 1692c; 2) a violation of the Illinois Collection Agency Act (ICAA); 3) invasion of privacy; and 4) a violation of the Illinois Consumer Fraud Act (ICFA). The Plaintiff was granted leave to amend the Complaint on February 25, 2013 to add a defendant, remove Count III (invasion of privacy), and add additional allegations in support of the remaining counts. On April 18, 2013, the Plaintiff filed his Second Amended Complaint naming as Defendants Audubon, DMP, and Fanelli and Associates, LLC, and pursing one count for violation of the FDCPA, one count for violation of the ICAA, and one count for violation of the ICFA. The crux of the Plaintiff's Second Amended Complaint is that the Defendants' phone calls to the Plaintiff and to his mother in an attempt to collect the Cash Store debt were in violation of the FDCPA, ICAA, and ICFA. On June 14, 2013, the Plaintiff filed a Notice of Dismissal with Prejudice as to the defendant Fanelli and Associates, LLC due to settlement with that defendant.

As of April 18, 2013, the date on which the Plaintiff filed his Second Amended Complaint, neither DMP nor Audubon had filed a suit against him. As of May 14, 2014, the date on which the Plaintiff filed his Motion for Summary Judgment, DMP and Audubon still had not filed a suit against him.

## II

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FRCP 56(a). A movant may show the absence of material fact by citing to admissible evidence in the record or by showing that the nonmovant "cannot produce admissible evidence to support the fact." FRCP 56(c)(1)(A), (B). The party opposing summary judgment must not merely rest upon the allegations of his complaint but must instead also point to admissible evidence in the record to show that a material fact is genuinely disputed. Id; *Anderson v Liberty Lobby, Inc.*, 477 US 242, 257 (1986) (explaining that the plaintiff must "present affirmative evidence in order to defeat a properly supported motion for summary judgment").

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Id at 248. There is a genuine dispute of material fact only where there is sufficient evidence favoring the nonmoving party that would permit a jury to return a verdict in the nonmoving party's favor. *Brummet v Sinclair Broadcast Group, Inc.*, 414 F3d 686, 692 (7th Cir 2005).

III

A

As an initial matter, the Plaintiff challenged a piece of evidence relied upon by the Defendants in resistance to the Plaintiff's Motion for Summary Judgment. Specifically, the Defendants rely upon an account history or call log purporting to summarize Audubon's collection efforts directed at the Plaintiff. The Plaintiff contends that the account history is hearsay and not a business record subject to the business record exception to the hearsay rule and thus it cannot be considered to defeat his Motion for Summary Judgment. The Plaintiff waived this argument by not raising it in his Motion for Summary Judgment. See *Wright v United States*, 139 F3d 551, 553 (7th Cir 1998) (explaining that an argument raised for the first time in a reply brief is waived because doing so deprives the respondent of an opportunity to brief the newly raised issues) (citing cases). Moreover, he waived the argument when he made the call log an exhibit to his Motion for Summary Judgment and cited to it as support for his

"undisputed material fact" that "Audubon's account notes reflect that someone at Audubon had a conversation with plaintiff on August 3, 2012." ([Doc. 47 at p. 4](#)).

Even if the Court were to determine that the Plaintiff's argument as to Audubon's call log was not waived, hearsay documents may be used as evidence in opposition to summary judgment "provided some showing is made (or it is obvious) that they can be replaced by proper evidence at trial." [*Eisenstadt v Centel Corp.*, 113 F3d 738, 742 (7th Cir 1997)](#) (internal citations omitted); [*McMillian v Johnson*, 88 F3d 1573, 1584 (11th Cir 1996)](#) (reading Supreme Court authority to provide that otherwise admissible evidence may be submitted in inadmissible form at summary judgment, though it must be submitted at trial in admissible form). It is rather obvious that the Defendants would be able to lay the appropriate foundation for the call log to be admissible at trial. Ultimately, the Court will consider Audubon's purported call log attached as Exhibit 12 to the Plaintiff's Motion for Summary Judgment and attached as Exhibit E to the Defendants' Response. Having resolved this issue, the Court now turns to the merits.

**B**

In his Motion for Summary Judgment on Liability, the Plaintiff first argues that the representations made to him during a phone call on August 3, 2012 that he had committed a felony and could be jailed, violated Section 1692e, e(4), e(7), and e(10) of the FDCPA. [15 USC § 1692e](#) provides in relevant part that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> * * *
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
> * * *
> (7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

6

> \* \* \*
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 USC § 1692e, e(4), e(7), e(10).

Viewing the evidence of record in the light most favorable to the Defendants, summary judgment is denied given the discrepancy in the parties' version of events surrounding the August 3, 2012 phone call. Resolution of this question requires, as the Defendants point out, a credibility determination which cannot be made by the Court on a motion for summary judgment. Moreover, it is premature to consider whether Monica's and Frank Salvasio's representations violated Section 1692e, 1692e(4), 1692e(7), or 1692e(10) of the FDCPA, as there is still a material dispute as to whether those representations were in fact made. Therefore, the Plaintiff's Motion for Summary Judgment is denied as to his claim that the August 3, 2012 phone call violated 15 USC § 1692e, e(4), e(7), and e(10).

## C

The Plaintiff next argues that Audubon's representation that a lawsuit had been or would be filed against him violated Section 1692e(2)(A) and e(5) of the FDCPA as well. Those provisions state:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> \* \* \*
> (2) The false representation of--
>     (A) the character, amount, or legal status of any debt;
> \* \* \*
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 USC § 1692e(2)(A), e(5). The Plaintiff again cites to the comments allegedly made by "Monica" and Frank Salvasio during the August 3rd telephone call that "Monica" asked for the Plaintiff's current address and place of employment as places to "serve" him,

7

and that Salvasio explained that if the Plaintiff was faced in court over the debt, he would pay 10 times the amount of his debt in "attorney fees and such." Specifically, he says that "Monica's" statement regarding service upon him suggested that a suit had been filed in violation of Section 1692e(2)(A) by mischaracterizing the legal status of the Plaintiff's debt. The Plaintiff also cites to the August 31, 2012 message he received that informed him, among other things, that "we will be sending you to court. You will be served at your homestead."

As discussed above, there is a question as to whether the August 3rd phone call from "Monica" took place, and so there remains a question of material fact as to whether the August 3rd phone call violated Section 1692e(2)(A) and/or e(5) of the FDCPA. Thus, the Plaintiff's Motion for Summary Judgment is denied as to his claim that the August 3rd phone call violated 15 USC § 1692e(2)(A) and e(5).

As for the August 31st voice message, the Plaintiff is not entitled to summary judgment on the issue of whether the voice message violated Section 1692e(2)(A) by misrepresenting the legal status of his debt. He says that the voice message could be understood to mean that a lawsuit had already been filed. That voice message must be viewed from the objective standard of an "unsophisticated debtor." *Pettit v Retrieval Masters Creditor Bureau, Inc.*, 211 F3d 1057, 1060 (7th Cir 2000). An unsophisticated debtor "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." Id (internal quotations and citations omitted). Given that definition of an "unsophisticated debtor," the use of the future tense in the August 31st voice message would not necessarily lead such a consumer to believe that a lawsuit had *already* been filed. A jury must therefore make this determination. As a result, the Plaintiff's Motion for Summary Judgment is denied as to his claim that the August 31st voice message violated 15 USC § 1692e(2)(A).

However, the Plaintiff *is* entitled to summary judgment on the issue of whether the Defendants' August 31st voice message violated Section 1692e(5). The Plaintiff says that the amount of time that has passed since that voice message without the

Defendants filing a lawsuit against the Plaintiff shows that Section 1692e(5) was violated by Audubon threatening an action it never intended to take. The Defendants argue that the Plaintiff has not met his burden to show that the Defendants never intended to sue him in violation of Section 1692e(5). Particularly, the Defendants say that their failure to sue the Plaintiff within three months of leaving the August 31st voice message is not evidence that they *never* intended to sue him to collect his debt. The Defendants cite to *Porter v Law Office of Charles G. McCarthy, Jr. & Associates* wherein the court determined that the Plaintiff did not meet her burden on the issue of the defendant's intent to sue where just about three months passed between the plaintiff's receipt of letters from the defendant and the plaintiff filing her complaint. 2011 WL 3320331, *7 (CD Ill 2011).

Unlike in *Porter*, the Plaintiff here presented more than just the period of inaction by the Defendants. Notably, the *Porter* court cited to *United States v National Financial Services, Inc.* which highlighted the fact that there was "no evidence that a determination to sue was actually made or even considered with regard to any of the millions of customers who received [the relevant correspondence threatening to consider the use of legal remedies to effect collection]." 98 F3d 131, 138 (4th Cir 1996). Similarly, here, the Defendants do not present any evidence to show that they took steps towards filing a lawsuit or any other evidence which would indicate they truly intended to bring suit against the Plaintiff.

In *Pierson v Franklin Collection, Service, Inc.*, the district concluded that a letter threatening to obtain a copy of a judgment if the debtor disputed the validity of his debt did *not* violate Section 1692e(5). 965 F Supp 2d 957, 966 (ED Tenn 2013). In reaching that conclusion, the Court relied upon the proof submitted by the defendant debt collector in the form of an affidavit and testimony by the president/sole owner of the debt collector and the affidavit of a senior credit analyst for the company (AT & T) that turned the debt over to the defendant for collection. Id at 964. Such evidence provided that AT & T regularly recommended that the defendant undertake legal action to collect a consumer debt in Tennessee, that the defendant and AT & T had the general intent to

9

pursue legal action if the debt could not be collected by other means, that AT & T would and had authorized legal action to collect debts in Tennessee, and that AT & T did authorize legal action during the relevant time period when the defendant was attempting to collect on the plaintiff's account. Id at 965. The Plaintiff offered no proof to contradict that factual testimony. Id.

Here, factual testimony like that presented in *Pierson* is not provided by the Defendants for the Plaintiff to contradict. Nevertheless, the Plaintiff has presented evidence to contradict the Defendants' argument that just because they did not file suit does not mean that they did not intend to do so as threatened in the August 31st voice message. Specifically, the Plaintiff has evidence that a search into whether either of the Defendants brought suit against anybody in the majority of counties in Illinois at any time garnered no results. See *National Financial Services, Inc.*, 98 F3d at 138 (agreeing with district court that the defendants' notices threatened to take legal action that they had no intention of taking where, among other things, there was no evidence that the defendant ever took any step toward the goal of filing suit against every debtor).

Even viewing the evidence in the light most favorable to the Defendants, the evidence presented is insufficient to permit a jury to return a verdict in their favor as to Section 1692e(5). Indeed, the Defendants presented no evidence to show a particular intention to sue the Plaintiff which would at least create a genuine dispute of fact on this issue. See id ("There must be a particularized intention to sue a particular debtor if he or she does not pay"); *Pierson*, 965 F Supp 2d at 966 (explaining that the defendants were entitled to summary judgment because the plaintiff offered no proof that adequately disputed or questioned the validity of the defendant's intent to use legal action to collect the debt if necessary). The Plaintiff's Motion for Summary Judgment is therefore granted as to his claim that the Defendants' August 31st voice message violated 15 USC § 1692e(5).

## D

The Plaintiff next argues that Audubon's disclosure of the debt to his mother violated Section 1692c(b) of the FDCPA. Section 1692c(b) provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

The Plaintiff says that Audubon disclosed his debt to his mother, Judy Aitken, when it called her at her workplace on a number of occasions inquiring about the Plaintiff's whereabouts. The Plaintiff points to his mother's deposition testimony wherein she testified that her office was bombarded with calls, and testified that her office manager, Wayne Labins, determined that the calls were coming from Audubon. The Defendants counter that Ms. Aitken never attributed the November 2012 phone call (the only phone call she took personally) to either of the Defendants, and she did not testify that the debt referenced in the phone call was the debt that is the subject of this litigation. They also argue that the Audubon Financial Bureau policy manual attached to the Plaintiff's Motion for Summary Judgment does not call for violations of the FDCPA because it merely advises collectors to contact debtor's relatives, neighbors, or place of employment, if necessary, without disclosing the debt which is permissible under certain provisions of the FDCPA.

The Plaintiff attempts to obtain summary judgment on this particular issue partly in reliance upon Ms. Aitken's testimony as to what Wayne Labins told her about the phone calls he received regarding the Plaintiff. As the Defendants point out, that is hearsay and so cannot be considered by the Court.[1] The Plaintiff also attempts to obtain

---

[1] Unlike Audubon's call log which the Plaintiff himself used to support his Motion for Summary Judgment, the Defendants have not cited to Ms. Aitken's testimony of what Wayne Labins said to support their argument opposing summary judgment. Also unlike the call log, the Plaintiff would not be able to present Labins's testimony in admissible form at trial. See *McMillian*, 88 F3d at 1584 (reading Supreme Court case to allow *otherwise admissible* evidence to be submitted in inadmissible form at the summary judgment stage as long as it is submitted in admissible form at trial) (emphasis supplied).

summary judgment in reliance upon his amended answer to Defendants' Interrogatory 17. His entire answer to Interrogatory 17 stated:

> In the 30 days prior to the August 3, 2012 call, plaintiff *believes* his only outstanding debt was the Cash Store debt. In 2012, Mr. Aitken was dunned from time to time by AFNI, Inc. for debts originally owed to OSF Medical Center. Plaintiff *believes* that there were two or three such debts and the approximate amount of each debt was $80. Also in 2012, Mr. Aitken's wife, Jill Aitken, had at least two outstanding debts, a student loan debt and a payday loan.

([Doc. 51 at p. 43](#)) (emphasis added). The Plaintiff's full interrogatory answer does not definitively show that the phone call Ms. Aitken personally took at work in November 2012 was from Audubon where the Plaintiff could only say that he *believed* his only outstanding debt was the Cash Store debt and that he was dunned from time to time for debts originally owed to OSF Medical Center. Finally, the Plaintiff's reliance on Audubon's policy manual is misplaced where, as the Defendants argue, it does not advise collectors to disclose the debt. Thus, there remains a material dispute for trial as to whether Audubon communicated the Plaintiff's Cash Store debt to his mother in violation of Section 1692c(b).

E

Next, the Plaintiff argues that Audubon's actions violated the ICAA and the ICFA. The Plaintiff's arguments in support of summary judgment under the ICAA and ICFA are barely more than conclusory. He merely cites to the particular provisions of the ICAA and ICFA and then states that the August 3rd phone call and August 31st voice message violated those provisions. The Court will not engage in a lengthy analysis where the Plaintiff himself did not do so. See [United States v South, 28 F3d 619, 629 (7th Cir 1994)](#) (explaining that it is up to the party seeking relief to sufficiently develop his arguments given our adversary system and finding that the defendant waived his challenge where he gave the relevant issue nonchalant treatment); [Borders v Greenwood Enterprises, Inc., 1997 WL 675039, *1 (ND Ill 1997)](#) (deciding that the court would not address on summary judgment the plaintiff's claims that were given only superficial

and conclusory treatment in her summary judgment brief). Ultimately, the evidence relied upon as to the FDCPA is the same evidence the Plaintiff relies upon to prevail on his ICAA and ICFA claims. Because genuine factual disputes preclude summary judgment as to all but one of the Plaintiff's FDCPA claims, and because those genuine factual disputes exist under the relevant provisions of the ICAA and ICFA as well, summary judgment must be denied as to the ICAA and ICFA claims.

F

Finally, the Plaintiff argues that DMP is liable for Audubon's actions. The Defendants did not provide any response to this argument or address it in any way. Accordingly, as the Plaintiff correctly argues, any such argument by the Defendants in opposition is waived. See *South*, 28 F3d at 629 ("perfunctory and undeveloped arguments are waived") (internal citations omitted).

IV

In the Defendants' Motion for Summary Judgment, they argue that the Plaintiff cannot produce any evidence of emotional suffering other than generic complaints of fear and embarrassment, and so he cannot recover actual damages under the FDCPA. Consumers who sue to enforce the FDCPA and are successful may recover actual damages, statutory damages, and attorney's fees and costs. 15 USC § 1692k. When a party seeks actual damages based upon emotional distress, the party must "provide a reasonably detailed explanation of the injuries suffered." *Denius v Dunlap*, 330 F3d 919, 929 (7th Cir 2003). It is not enough to rely on conclusory statements. Id, citing *Biggs v Village of Dupo*, 892 F2d 1298, 1304 (7th Cir 1990).

While the Defendants argue that the Plaintiff simply disconnected his phone in response to the Defendants' phone calls, the Plaintiff testified during his deposition to doing considerably more than just disconnecting his phone.[2] The Plaintiff contacted

---

[2] As the Court discussed above in Section III A of this Opinion, there is a question of material fact as to whether the Defendants placed a call to the Plaintiff on August 3, 2012 informing him that he committed a felony and could be jailed. For purposes of ruling on the Defendants' Motion for Summary Judgment, the Court assumes

13

Attorney Patrick Chambers to determine whether Chambers would represent the Plaintiff in the event he was arrested for non-payment of his debt, he arranged with his father to contact Attorney Chambers in the event he was jailed, he tried to maintain about $1,000 in his checking account to be used to post bail, he removed the house numbers from the front of his house to maintain a low profile, he asked his postal carrier not to disclose where he lived, he maintained a post office box which he visited after hours in order to attract as little attention as possible, and he talked to his father who had a degree in counseling about his intense anxiety. The Plaintiff also articulated that he became very fearful that he would not be able to care for his infant son, and that he suffered loss of sleep and appetite because of his fear of being jailed for non-payment of his debt.

The Plaintiff testified that he went out of his way to minimize the extent of his distress over the Cash Store debt so that his wife's stress would not increase. The Plaintiff's mother testified that when he finally confided in her, he expressed that he was feeling nervous, stressed, and worried about the situation involving his debt. The Plaintiff's mail carrier, Robinson, testified that the Plaintiff looked nervous and scared and informed Robinson that he was really scared and nervous somebody was looking for him.

In their Reply, the Defendants posit that the Plaintiff cites no authority to support his argument that his responsive conduct establishes the emotional distress he alleges and for which he seeks actual damages. That may be, but in doing so, the Plaintiff does more than just offer conclusory statements of his emotional distress. The Plaintiff certainly explained the circumstances of his alleged emotional injury in detail. See *Denius*, 330 F3d at 929 (explaining that when the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail). Furthermore, if the facts underlying the case are so inherently

---

that the August 3, 2012 phone call actually occurred, as the Court is required to view the evidence in the light most favorable to the Plaintiff when considering the Defendants' Motion. *Anderson*, 477 US at 248.

degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's actions, then the person can establish injury. *Alston v King*, 231 F3d 383, 388 (7th Cir 2000). Here, assuming for purposes of the Defendants' Motion for Summary Judgment that the August 3rd phone call took place, the Plaintiff was told that willingly defrauding the Cash Store of money was considered a Class I felony and that people go to jail for doing so. The suggestion of spending time in jail over the failure to pay one's debts is evidence of conduct by the Defendants that was inherently degrading to the Plaintiff. Given the evidence in the record of the Plaintiff's conduct in response to the Defendants' phone calls and the threat of jail time, there is a dispute of material fact that precludes summary judgment on actual damages.

Finally, the Plaintiff's evidence of the content of the Defendants' phone calls, his conduct in response to the Defendants' phone calls, and his statements made to others are sufficient at the summary judgment stage to create a genuine issue as to whether the calls caused the Plaintiff's alleged emotional distress. *Thomas v Law Firm of Simpson & Cybak*, 244 F App'x 741, 743 (7th Cir 2007) (providing that only losses flowing from and FDCPA violation are recoverable as actual damages). Though the Defendants maintain that the Plaintiff caused his own emotional distress rather than their phone calls doing so, that is a question for the jury to consider in light of the evidence presented.

## V

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment (Doc. 47) is GRANTED IN PART and DENIED IN PART. The Plaintiff's Motion is GRANTED as to his claim that the Defendants' August 31, 2012 voice message violated 15 USC § 1692e(5). The Plaintiff's Motion is denied as to the claims in his Second Amended Complaint that: the Defendants' August 3, 2012 phone call violated 15 USC § 1692e, e(2)(A), e(4), e(5), e(7), and e(10); that the Defendants' August 31, 2012 voice message violated 15 USC § 1692e(2)(A); that the Defendants' calls to the Plaintiff's mother at her workplace violated 15 USC § 1692c; that the Defendants violated the ICAA; and that the Defendants violated the ICFA. Furthermore, the Defendants'

Motion for Summary Judgment ([Doc. 46](Doc. 46)) is DENIED.  Within seven (7) days, the parties must submit to the Court a statement of what issues remain for trial.

Entered on October 28, 2014.

s/Jonathan E. Hawley  
U.S. MAGISTRATE JUDGE